THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL SANTIAGO RODRÍGUEZ ET AL., Defendants and Appellants.

No. 15599. Argued March 8, 1954.—Decided September 14, 1955.

*Guillermo S. Pierluisi* and *M. Orraca Torres* for appellants.
*José Trías Monge, Attorney General,* and *Jaime García-Blanco, Special Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

This is a case of murder in the second degree filed against three members of the Insular Police of Puerto Rico who were accused of having attacked Ramón Vargas Moreno, a human being, with their regulation guns by firing several shots into different parts of his body, as a direct result of which he died. The case was heard before the jury of the Bayamón Part of the Superior Court and the defendants were found guilty of manslaughter.

Against the judgment rendered by the trial court, the appellants assign the commission of the following errors:

"FIRST ERROR:

"That the trial court erred in transmitting the following instructions to the Jury:

"*a*) The gentlemen of the jury may use their judgment and reach a conclusion as to whether in the first place, according to the law, a felony had been committed and whether Santiago at the time of pursuing, and intending and attempting to arrest the deceased, as provided by law, had reasonable grounds to believe that the deceased had committed such felony. (Instructions of the Court, pp. 558–559 of the T. E.)

"*b*) The Court further instructed that a policeman is a peace officer. That he may effect an arrest in fulfilment of a warrant given to him for said purpose or he may, without a warrant, arrest a person in the cases enumerated by the court to the jury, that is, for a public offense actually committed or attempted in his presence, he may arrest the person without a warrant or order. When a felony has in fact been committed and the officer has reasonable cause to believe that the person arrested has committed it. On a charge made upon a reasonable cause of the commission of a felony by the party arrested.

"Thus an insular policeman is authorized to arrest a person who has committed a public offense in his presence, whether a felony or a misdemeanor, at any time of the day or night without need of a warrant. (Instructions of the Court, pp. 562–563 of the T. E.)

"*c*) A peace officer may never use more force than is necessary in order to arrest a person, nor may he, consequently, in the absence of actual necessity, use his gun, *not even to*

*threaten a fugitive.* When a person on being arrested places himself outside the law, it does not justify the employment by the policeman of more force than is necessary to make the arrest. (Instructions of the Court, p. 563 of the T. E.)

"SECOND ERROR:

"That the trial court erred in transmitting to the Gentlemen of the Jury the following instructions requested by the prosecuting attorney:

"*a*) That the mere possession of stolen articles in the hands of a person without other circumstances connecting him with the facts of the theft, is not sufficient to determine that the person in whose possession the stolen article was found is the one who stole it.

"*b*) That when it is sought to deprive a person of his liberty by an illegal arrest or by an attempt to arrest him illegally, he may use such force as is reasonably proportionate to the damage intended in order to preserve his liberty.

"*c*) That a person who is resisting an illegal arrest has reasonable grounds to believe and believes that he is in imminent danger of death or of receiving serious bodily injury, or that a peace officer is about to commit a felony on his person and that there is no other apparent and safe means to prevent the damage, he (sic) may kill the officer.

"*d*) When an officer is making an illegal arrest, the person whom he tries to arrest has resisted his illegal arrest and has used force against the officer as a result of the latter's wrongful conduct, the officer is not justified in repelling the force until he has desisted from the illegal arrest and he cannot justify a homicide even if committed in self-defense because the need to kill was brought about by an illegal act of the officer. (Pages 6 and 7, Transcript of the Record.)

"THIRD ERROR:

"That the trial court erred in refusing to give the jury the following instructions requested by the defense:

"*a*) The Court instructs you, ladies and gentlemen of the jury, that homicide is justifiable when committed by public officers in the following cases:

"In obedience to any judgment of a competent court.

"When necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty.

"When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person.

"When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein.

"When necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed or in lawfully keeping and preserving the peace.

"b) And I likewise instruct you, ladies and gentlemen of the jury, that an Insular Policeman is a public officer and that if in attempting to effect an arrest or fulfil any of his legitimate functions he is resisted, he is not obliged to desist from the arrest or execution of his legitimate functions, but that it is his duty to proceed with the fulfilment of his duty and reduce to obedience the person whom he attempts to arrest, and that if the latter shows resistance through violence or by using a deadly weapon and in an attitude or under circumstances sufficient to make a reasonable person believe that such person is about to use, or could make immediate use of said deadly weapon, the policeman or the officer is justified in firing the first shot. And the court likewise instructs you that a public officer or policeman to whom resistance is shown when complying with one of his legitimate functions such as making an arrest, is not obliged to decline a struggle but may press forward and employ any force which is reasonably necessary, and he is justified in killing his opponent under circumstances in which any other private person could not do it.

"c) A person or a public officer may repel force with force in the defense of the person, property or life against one who openly attempts or tries through violence or surprise to commit a specific misdemeanor or felony or either one, or to inflict serious bodily injury on his person and the danger that would justify the defendant in committing the act charged may be real or apparent, and the jury need not consider whether the defendant was in real danger of his life or property but only whether the circumstances were such that they induced a reasonable person to believe that his person or his property were

exposed to such danger; and if he could reasonably believe so and had sufficient cause to believe so, and committed the act charged under such belief, even if it appears that the deceased was not armed, you must acquit him.

"*d*) I likewise instruct you, gentlemen of the jury, that when a man through no fault of his own is suddenly attacked in such a manner that his life or personal safety is jeopardized, he is not bound to retreat or to consider the act of retreating, but that he may remain where he is and defend himself to the point of killing his aggressor if it is reasonably necessary. Therefore, although one must kill only when there is an absolute need, either real or apparent, to do so, it is considered as a matter of law that there exists an absolute need when a person through no fault of his own is in such imminent peril and this is all the more so in the case of public officers who in the fulfilment of their duties try to make an arrest, since an officer in the fulfilment of his duty cannot desist from said arrest because his life is in danger, but that his duty above all is to fulfill his legitimate functions. (Pages 3, 4 and 5, Transcript of Record.)

"FOURTH ERROR:

"The trial court erred in preventing the defense, by objections of the prosecuting attorney, from arguing before the jury as to the theft of the automobile by the deceased and which caused his pursuit by the policemen-defendants, the court committing grave error in stating in the presence of the jury that there was no proof of theft or that the offense of theft had been committed, all of it in the presence of the jury, which caused the defendant to move for a mistrial which was denied by the court, which error was in no way cured by the instructions given to the jury, to all of which the defendants took an exception. (See, pp. 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, T. E., session of October 10, 1952, taken by the stenographer Agustín Cruz Cabrera). (See, likewise, pp. 490, 491, 492 and 493 of the T. E., corresponding to the session where Mr. Juan Amaral acted as stenographer.)

"FIFTH ERROR:

"That the verdict in this case is contrary to the evidence, the jury having committed manifest error in the weighing of the evidence and above all in failing to conclude that it was a justified homicide."

■■ The facts in this case took place on November 28, 1951, prior to the adoption of our Constitution. Therefore, the study that we will make on the legality of the arrest which resulted in the death of the person whose arrest was attempted and the justification of the homicide committed in the fulfilment of a public duty, must be found in the state of law prevailing at the time of the occurrence.

■■ The substantial question raised in the first error is whether the question of probable cause is one for the judge presiding at the trial, or for the jury to whom the facts as to the probable cause of the commission of a felony supporting the arrest are submitted. The rule is that the determination of probable cause of the commission of the felony which causes the arrest is a question of law which must be decided by the presiding judge as long as there is no conflicting evidence as to the facts which determine the probable cause. However, if there exists a conflict, the question of law becomes one of fact which must be submitted to the jury. Contrast the case of *People* v. *Kilvington*, 37 Pac. 799, 800 (Supreme Court of California) (De Haven, Jr.) (1884), with the case of *People* v. *Meléndez*, 62 Pac. 109, 110 (Supreme Court of California) (Smith) (1900). See also 5 California Jurisprudence (2d) 160 (Bancroft-Whitney Company, 1952 ed.) ; *Michel* v. *Smith*, 205 Pac. 113, 117 (Supreme Court of California) (Waste) (1922).

When the evidence as to whether or not there is probable cause of the commission of a felony, is submitted to the jury because the presiding judge believes that the evidence of probable cause is conflicting, upon instructing the jury, the judge must summarize both versions of the evidence and give instructions in the alternative covering both theories so that the jury may know how to act according to the credit it gives to one or the other version. If the jury believes the facts which determine the existence of probable cause of the commission of a felony, the defendant must be considered

as an officer of the law in the fulfilment of a public duty; contrariwise if the jury believes the facts which determine that there existed no probable cause of the commission of a felony, the defendant must be considered the author of an illegal arrest: *Aitken* v. *White*, 208 P. 2d 788, 790–792 (District Court of Appeals of California) (White) (1949).

■ Personal liberty is considered so important a matter to the juridical assumption of a normal civil life, that even before the adoption of our Constitution, the different instances where an illegal arrest might be effected were all expressly provided by law. The arrest of a person without a warrant issued by the competent authority is the exception and not the general rule, and therefore, unless the arrest is made strictly within the statutory provisions, it becomes illegal. Alexander—*The Law of Arrest* 427 *et seq.* (Dennis & Co. Inc., 1949 ed.).

■ Section 116 of the Code of Criminal Procedure of Puerto Rico provides that when there is no warrant of arrest bearing the endorsement of a competent authority, a peace officer may only arrest a person (1) for a public offense committed or attempted in his presence (an offense in a tentative degree); (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it; (4) on a charge made, upon a reasonable cause, of the commission of a felony by the party arrested; (5) at night, when there is reasonable cause to believe that he has committed a felony.

As to clause 1 there is no doubt as to the legality of the arrest when the offense committed or attempted is in the presence of the peace officer. We have decided that this power remains even after the adoption of our Constitution which forbids the warrant of arrest prior to the judicial determination of a probable cause. *People* v. *Soto* 77 P.R.R. 193; (Belaval).

■ As to clause 2 which provides that the peace officer may arrest a person who has committed a felony although not in his presence, it is convenient to state that in such case the officer does not intervene in the determination of probable cause of the commission of the felony. The probable cause of the commission of the felony has already been determined by a competent authority and the peace officer has previous knowledge of that fact when he proceeds to effect the arrest. He acquires the knowledge through the information supplied by the State to the peace officers for the seizure of defendants, inmates or escaped prisioners, or through the information which he receives from another peace officer who shows him the warrant of arrest issued in order to arrest a specific person. 1 Alexander, *The Law of arrest* 444 (cited ed.).

As to clause 3 which provides that the peace officer may arrest *when a felony has in fact been committed* and he has reasonable cause for believing the person arrested to have committed it, the probable cause of the commission of a felony has already been determined by the competent authority. The only thing left for the consideration of the peace officer is the identity of the person who has committed it. Alexander, *op. cit.*, p. 441. Up to what extent the identity of a person forms part of the determination of probable cause is a substantial problem in our new constitutional order, which we anticipate for the delight of the scholars. I Alexander, *op. cit.*, 441.

■ As to clause 4 which provides that the peace officer may arrest a person on a charge made, upon a reasonable cause, of the commission of a felony by the party arrested, the peace officer acts at his own risk as a sort of magistrate for the purpose of determining probable cause. The same thing could be said of clause 5 which is a prolongation of clause 4 covering arrests at nighttime. 1 Alexander, *op. cit.*, 443.

In order to decide the error under our consideration we must determine, after examining the facts of the case, whether there was actually conflicting evidence concerning the facts supporting the probable cause of the commission of a felony. We have carefully examined the testimonies of Pedro Tartak, Octavio F. Amy, William Hillyier, Héctor Torres Díaz and Emilio Osorio, and we must accept the conclusion of the trial court in the sense that there was such a conflict and that, therefore, the judge who presided at the trial acted correctly in submitting to the jury the decision of the same. The conflict mainly exists between the testimony of the insular policemen Emilio Osorio and of Mr. Héctor Torres Díaz.

We believe that the instructions of the judge who presided at the trial substantially complied with the two obligations imposed by the law in this case: (1) in the summary of the evidence he made reference to, but without stressing them, the two versions presented by the evidence as to the possible knowledge had by the defendant policeman Rafael Santiago Rodríguez of the commission of a felony and (2) in the instructions as to the application of the law, he mentioned, but without emphasizing it, the difference between an illegal arrest and a legal arrest which is the one that supports justifiable or excusable homicide when committed in the fulfilment of a public duty.

The instructions of the judge who presided at the trial in this sense were the following:

"It being the theory of the defense in this case that these defendants acted in fulfilment of their functions as public officers, as insular policemen, while they tried or attempted to make an arrest, the Court is also going to read to you other provisions of law concerning arrests and how they may be made.

"Section 114 of the Code of Criminal Procedure defines an arrest as follows:

" 'An arrest is taking a person into custody, in a case and in the manner authorized by law.'

"The following section (115) provides:

" 'An arrest is made by an actual restraint of the person of the defendant or by his submission to the custody of an officer.'

"That is the way to make an arrest. It further states 'The defendant must not be subjected to any more restraint than is necessary for his arrest and detention.'

"Then the following section (116) provides the following:

" 'A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

" '(1) For a public offense committed or attempted in his presence;

" '(2) When a person arrested has committed a felony, although not in his presence;

" '(3) When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it;

" '(4) On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested;

" '(5) At night, when there is reasonable cause to believe that he has committed a felony.'

"Section 123 of said Code of Criminal Procedure also provides that 'When the arrest is being made by an officer under the authority of a warrant, after information of the intention to make the arrest, if the person to be arrested either flees or forcibly resists, the officer may use all necessary means to effect the arrest.'

"Gentlemen of the jury, you are the supreme judges of the facts for weighing the evidence; the evidence which has been introduced before you is connected with all that happened when the defendant Santiago was asked by a person called Héctor Torres Díaz to do something and he got into the car with that person pursuing another car which was driven by somebody who later was found to be the deceased; what happened later in front of the Target Shooting Club beyond Buchanan; and what happened subsequently up to the final outcome; and on the basis of all that evidence weighed and considered by the

gentlemen of the jury, the gentlemen of the jury may use their judgment and reach a conclusion as to whether in the first place, according to the law, a felony had been committed and whether Santiago at the time of pursuing and intending and attempting to arrest the deceased, as provided by law, had reasonable grounds to believe that the deceased had committed such felony.

"Also on the basis of the evidence introduced, the gentlemen of the jury shall make their findings of fact as to whether in pursuing and attempting to arrest the deceased, the policeman, as stated by the law, could have knowledge or had knowledge, that the person to be arrested had committed a felony although not in his presence, in Santiago's presence."

It is true that the judge who presided at the trial instructed the gentlemen of the jury to the effect that "a peace officer may never use more force than is necessary in order to arrest a person, nor may he, consequently, in the absence of actual necessity, use his gun, not even to threaten a fugitive." But such instruction instead of being contrary to the Law of Arrest forms part of the legal doctrine applicable to the case. See 1 Alexander, *The Law of Arrest* 481 *et seq.* (cited ed.) ; psychologically speaking, the firing of some shots into the air, while pursuing a suspect, instead of aiding his arrest, makes it more difficult. It is natural that the person who tries to resist an arrest by fleeing, upon realizing that shots are being fired at him, develops a greater apprehension as to the physical damage which he may suffer if caught.

The first error was not committed.

As to the second error to the effect of having given the jury certain instructions requested by the Prosecuting Attorney, we are convinced that, although said instructions were requested, the judge who presided at the trial did not give them to the jury. Therefore, the error was not committed.

As to the third error in having refused to give the jury certain instructions requested by the defense, although said instructions were not given in the form requested by

the defense, they were substantially given with the same effect of enlightening the jury. Compare the instructions requested under the letter (*a*) of this error with the instructions given by the judge at pages 552–554 of the transcript; the instructions requested under the letter (*b*) with the instructions given by the judge at page 563 of the transcript; the instruction requested under letter (*c*) with the instructions given by the judge at page 561 of the transcript; the instruction requested under letter (*d*) with the instructions given by the judge at page 561 of the transcript.

 As to the fourth error, concerning the fact that the defense was not allowed to argue before the jury, as to the theft of the automobile by the deceased, the transcript leaves no doubt as to the fact that the initial error of the judge, if it may be called an error, was totally cured after the jury withdrew for the discussion of the question raised by the defense. Concerning this incident, the transcript shows the following:

"THE COURT: Gentlemen of the jury; a question of law was raised yesterday which was discussed in the presence of the gentlemen of the jury and the court gave the following ruling which will be read by the stenographer Agustín Cruz Cabrera:

"(The stenographer Agustín Cruz Cabrera reads the ruling of the court to the gentlemen of the jury):

"In so holding, the Court really indicated that there actually had been no witness who expressly testified that said car had been stolen. There is, however, in the evidence a series of circumstances in connection with that vehicle and with the person who possessed it, and as to · the ·circumstances more or less known to the parties, the defense as well as the prosecuting attorney argued before the gentlemen of the jury on those points. But the jury is the one to make a final decision on that particular, taking into account the testimony of the witnesses who testified on facts in connection with that vehicle.

"Are both parties satisfied?

"DEFENSE: We take exception anyway because we believe that the instruction is not clear enough.

"THE COURT: My colleague may suggest whatever he deems pertinent and, if the court believes it correct, it will rectify.

"DEFENSE: I believe that the court should make clear for the record that the ruling that the court gave was actually erroneous and it must rectify in that way.

"THE COURT: Yes, as to everything which is rectified and as to what I said yesterday afternoon, the gentlemen of the jury shall understand that the ruling of the court is rectified as to that particular."

As a matter of fact there was no direct evidence of the theft of the automobile, although there were circumstances tending to indicate that the deceased had taken the automobile, the night before, with or without permission, and when he realized that the depositary had found out about the collision of the automobile with the gate, instead of delivering it in that condition, he fled with the automobile. The judge submitted both theories to the consideration of the jury and in so doing acted correctly.

The verdict is not contrary to the evidence. There was an obvious conflict in the evidence not only as to the legality of the arrest but also as to the justification of the homicide. The gentlemen of the jury settled the conflict acting within the power granted to them by the law for such functions. From the two versions of the evidence the one given by the prosecuting attorney seems more probable. Therefore, we cannot interfere with the findings of the jury.

The judgment appealed from will be affirmed.

Mr. Chief Justice Snyder concurs in the result.