[Civ. No. 16914.  Second Dist., Div. One.  July 29, 1949.]

ROGER M. AITKEN, Respondent, v. W. W. WHITE et al., Appellants.

Desser, Rau, Christensen & Hoffman for Appellants.

Joseph N. Owen for Respondent.

WHITE, P. J.—This appeal is taken in an action for damages for false arrest and imprisonment brought against three members of the Police Department of the city of Beverly Hills, C. H. Anderson, Chief of Police, Captain W. W. White, Chief of Detectives, and Sergeant Ray Borders. The cause was tried before a jury which brought in a verdict against defendant Anderson for $6,000 and against defendant White for $4,000. The jury also brought in a verdict "against" defendant Borders, but assessed no damages against him. Upon being sent out to reconsider their verdict as to defendant Borders, the jury again found for the plaintiff and assessed the sum of $10 as damages. Judgment was rendered on the verdicts. Defendant Borders tendered payment of the $10 judgment (which in the superior court carried no costs), but the tender was refused. Thereafter Borders' motion that the judgment against him be satisfied upon deposit of $10 with the clerk was granted in the law and motion department of the superior court. Thereafter the trial court denied defendants White and Anderson's motion for new trial upon plaintiff's consenting that the verdict against Chief Anderson be reduced to $4,000, the same amount as had been awarded against Chief of Detectives White. Subsequently defendants Anderson and White moved that the $4,000 judgment against them be declared satisfied by reason of the satisfaction of the $10 judgment against the joint tort feasor Borders. This motion was denied.

Defendants White and Anderson have appealed from:
(1) The judgment;
(2) The "order of the court made June 28, 1948, denying

the motion heretofore made for a new trial or for judgment notwithstanding the verdict"; and

(3) The order of July 27, 1948, denying defendants White and Anderson's motion for satisfaction of judgment.

The following statement of facts is taken from appellants' opening brief:

"Plaintiff was a salesman in the jewelry store of Brock and Company in Beverly Hills and Mr. Orville H. Joy was manager of the store. On November 12, 1946, a loss of jewelry occurred. Captain White made an investigation, and was informed by Mr. Joy that Aitken had set up the window display that morning and had access to the jewelry; that Aitken had himself reported the disappearance to Joy. He was further informed that Aitken and Joy were the only salesmen in the store that day, and that only Joy and Aitken had a key to the place where the jewelry was kept. The day had been rainy and very few customers had come in. Mr. Joy advised Captain White that he knew all the customers in the store that day with the exception of three people who came in the afternoon, and that Aitken alone waited on them. On this particular day one George Sheldon also came in. Aitken always waited on Sheldon. Sheldon came in while Aitken was waiting on some other people and spoke to him while waiting for Aitken to get through to take care of him. White and Borders were further informed that on the same morning of November 12, Aitken had been observed in the company of George Sheldon having coffee in a drug store.

"Aitken told White that he had met Sheldon some time in 1945 and that he had been in the store many times after the first meeting. White was also informed that there had been other jewelry disappearances in the same store. In February, 1946, a diamond solitaire was missing. It was reported to White that Aitken had been on duty that day too, and that Sheldon had likewise been in to see Aitken on that day. Sheldon had been arrested on two occasions by the Beverly Hills police.

"On November 16, 1946, White received a call from Joy advising that he had just received an anonymous phone call wherein he was told that George Sheldon and one Lee Sterling were attempting that day to sell the missing diamonds. Sheldon was arrested that night, but did not have the jewelry on his person. He did have in his possession sixty-four one-hundred-dollar bills. He stated he could not tell where he

got the money because it would involve too many people. Sheldon was released on bond.

"On Friday, November 22, 1946, defendant Anderson received a Pinkerton Detective report on both Aitken and Sheldon. This report was offered in evidence, but was excluded on the ground that it was immaterial, hearsay, did not support reasonable cause for arrest of Aitken, did not charge him with any offense or connect him with the particular offense in question.

"On the same day, Friday, November 22, after receiving the Pinkerton report, White and Borders picked up Aitken at Brock & Co. at about 3:30 p. m., took him to his room, which they searched, and at about 4:30 p. m. took him to the office of Chief Anderson, where he was questioned about the jewelry disappearance and matters contained in the Pinkerton report. Upon inquiry concerning plaintiff having lost employment and losses of jewelry at places where he previously worked and whether he had been questioned by employers with regard thereto, plaintiff at first denied the information, but after being confronted with the facts contained in the report, later admitted part thereof. Upon the basis of the investigation made and information obtained, and on the basis of the interrogation of Aitken, White at that time believed Aitken guilty. During the course of the investigation White conferred with Anderson on all the above matters. Chief Anderson also believed Aitken guilty, and in addition, was afraid he might leave town, since there was nothing to hold him here. He had only a small room, was unmarried, had no particular strings to tie him here, and there was $25,000 worth of jewelry involved.

"Aiken was not abused or maltreated during his imprisonment. He was released from custody at 8:43 a. m. Monday, November 25, 1946, there being insufficient evidence upon which to base a complaint. At no time during the custody of Aiken was the City Court of Beverly Hills in session."

To the foregoing statement of facts respondent in his brief suggests the following additions:

"It was denied that on the morning of the loss Aitken had coffee with Sheldon. This information would appear to be in the category of other information Anderson claimed to have, to the effect that he had overheard conversation of Aitken with confederates on Aitken's telephone, whereupon he was told by the latter that he had no telephone. Occasional losses

of jewelry in a jewelry store are not unusual. Brock's lost both jewelry and their strong-box when Aitken could not have possibly been responsible for such losses. Anderson did not believe Aitken would leave town, because his experience in this type of case was that the wrongdoer did not run away. Defendants knew that Aitken had property back east. Both White and Anderson were familiar with criminal law and arrests thereunder. They put Aitken in jail and held him while further investigating the case, and released him on Monday, having no greater information that day than they had on the day they put him in jail. No effort was made to take him before any magistrate.''

Appellants' first ground for reversal is that the court erred in submitting to the jury the question of whether defendants had probable cause to believe plaintiff had committed a felony, for the reason that ''probable cause'' is a question of law to be determined by the court alone. They further contend that the court erred ''in giving the jury a definition of probable cause and in effect instructing them to find for or against defendants according to whether or not *they* determine the facts to be within or without the definition.''

The record discloses that the court instructed the jury with reference to ''probable'' or ''reasonable'' cause as follows:

''. . . The arrest having been made, the law presumes it unlawful unless the contrary is shown. The burden is upon the defendants to prove that they had reasonable cause to believe that the plaintiff had committed a felony.

''If you find from the evidence that the defendant police officers had reasonable cause to believe that the plaintiff, Roger M. Aitken, was guilty of a felony in view of all the circumstances disclosed by the evidence, your verdict should be in favor of the defendants unless you find that the defendants unreasonably delayed taking plaintiff before a magistrate, in which event your verdict should be for the plaintiff, notwithstanding that you may find that the defendants had reasonable cause to believe that plaintiff had committed a felony. . . .

'' . . . In other words, in order for defendants to justify the arrest in this case, they must have had reasonable cause to have believed that plaintiff had committed this particular offense. Such reasonable cause cannot be based upon mere suspicion, nor can the arrest in question be based upon reasonable cause to have believed that plaintiff had, or might have, committed other offenses for which an arrest might have been legal.

"You are instructed that in this case the arrest was not made with a warrant, nor did the loss of the jewelry occur in the presence of any of the arresting officers. Under such circumstances an arrest could have been legally made only if defendants had reasonable cause to believe that plaintiff had committed the felony of taking the jewelry. Under such circumstances, the arrest having been shown, the burden then devolves upon the persons making the arrest to show justification therefor. This defendants have attempted to do by proof of information alleged to have been given to them that it was claimed other jewelry was lost or disappeared while plaintiff was associated with Brock & Company and with other firms in New York, and also that it was claimed that plaintiff had associated with one George Sheldon, a person known to the defendants to be a convict. Plaintiff denies such association except as a salesman in the store of Brock & Company.

"If, from the proof of such facts, you should find that the defendants did not have reasonable cause to believe that plaintiff had committed the felony of taking the jewelry, then you are instructed that defendants have failed to justify their act in making such arrest and you would be warranted in finding in favor of the plaintiff.

"Reasonable cause to believe a person has committed a felony is defined to be a state of facts or circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably, and without prejudice, to believe the person arrested to be guilty.

"When an arrest is made without a warrant by a peace officer or private person, the person arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made and a complaint, stating the charge against the person, must be laid before such magistrate.

"If you find that the defendants, or either of them, in this case unreasonably delayed taking the plaintiff before such magistrate, then the detention was unlawful and you would be warranted in finding for the plaintiff, irrespective of whether the defendants had or had not reasonable cause in the first instance to believe that the plaintiff had committed the felony of taking the jewelry.

"You are instructed that an officer arresting without a warrant cannot justify himself in holding the prisoner for an unreasonable time before obtaining a warrant upon the

ground that such delay is necessary to investigate the case.''

The foregoing constitutes substantially the entire charge to the jury on the subject of reasonable cause.

■ It is settled that, as contended by appellants, the question of reasonable or probable cause is one for the court, and not the jury. When the facts are admitted or beyond controversy, the question is to be determined by the court. When the facts are controverted or the evidence conflicting, then the determination of their legal effect by the court is necessarily hypothetical, and the jury are to be told that if they find the facts in a designated way, then such facts do or do not amount to probable cause. (3 Cal.Jur. ''Arrest,'' § 6; *Miller* v. *Lee*, 66 Cal.App.2d 778, 786, 787 [153 P.2d 190]; *Franzen* v. *Shenk*, 192 Cal. 572, 578 [221 P. 932]; *Ball* v. *Rawles*, 93 Cal. 222 [28 P. 937, 27 Am.St.Rep. 174]; *People* v. *Kilvington*, 104 Cal. 86, 89, 90 [37 P. 799, 43 Am.Rep. 73].)

■ It is manifest, from a reading of the foregoing instruction, that by it the court submitted to the jury the entire question in reference to the evidence of probable cause on the part of appellants to arrest respondent. This placed upon the jury the obligation not only to find whether the facts relied upon by appellants to show such probable cause were true, but also, if true, to determine whether or not they were legally sufficient for that purpose. The instruction was therefore erroneous. In no case is it within the province of the jury to decide whether the circumstances which they may find the evidence establishes are sufficient to constitute probable cause. Unless the evidence out of which the question of probable cause arises is conflicting, its existence or nonexistence is a pure question of law. And where, as here, the evidence was in conflict, it was the duty of the court to instruct the jury as to what facts, if established, would constitute probable cause, and only the question as to the existence of such facts should have been submitted to them. (*People* v. *Kilvington*, *supra*, p. 90; *Franzen* v. *Shenk*, *supra*, pp. 578, 583.) The facts set forth in the foregoing instruction were not the only facts of which evidence respecting probable cause had been given to the jury. And the instruction left to the jury the function of determining the existence or nonexistence of probable cause according to their judgment as to whether or not the facts and circumstances in evidence came within the definition of probable cause as that term was defined in the instructions.

The rule in this respect is thus enunciated in *Ball* v. *Rawles, supra,* at page 228:

"Neither is it competent for the court to give to the jury a definition of probable cause, and instruct them to find for or against the defendant according as they may determine that the facts are within or without that definition. *Such an instruction is only to leave to them in another form the function of determining whether there was probable cause.* The court cannot divest itself of its duty to determine this question, however complicated or numerous may be the facts. *It must instruct the jury upon this subject in the concrete,* and not in the abstract, and must not leave to that body the office of determining the question, but must itself determine it, and direct the jury to find its verdict in accordance with such determination." (Emphasis added.)

(See, also, *Michel* v. *Smith,* 188 Cal. 199, 206 [205 P. 113]; *Miller* v. *Lee, supra,* pp. 786, 787.)

In the last of the two cases just cited it is said, at page 786:

"It is unquestionably the rule that the court must determine as a matter of law what does and what does not constitute probable cause, but it is the function of the jury to determine on conflicting evidence whether or not those facts exist which must be established to constitute want of probable cause. The approved method is for the court to instruct the jury that if they find and determine certain questions of fact properly submitted to them to be true or untrue their verdict must be for the plaintiff, or for the defendant, as the case may be."

█ It is next urged that the court erred in entering judgment on the jury's verdicts against Anderson, White and Borders in the sums of $6,000, $4,000 and $10 respectively, for the reason that in an action against joint tort feasors compensatory damages cannot be apportioned. In *Oldham* v. *Aetna Ins. Co.,* 17 Cal.App.2d 144 [61 P.2d 503], the jury brought in a verdict against one defendant for $282 special damages and $6,000 general damages, and against another defendant for $282 special damages and $4,000 general damages, and judgment was entered against each defendant for the amount of the verdict against him. In the case just cited it was said, at page 146: "The law appears to be well settled that where the action is for compensatory damages suffered on account of a wrong in which both defendants join, the damages cannot be severed."

We are here confronted with the fact, however, that the

trial court upon motion for a new trial, and with the consent of the plaintiff, entered but a single judgment against the two appellants herein for the sum of $4,000. It further appears that upon rendition of the verdicts the clerk, in accordance with his duty, entered the judgments in conformity with the verdicts. (Code Civ. Proc., § 664.) This entry was a clerical and not a judicial act. The verdicts returned were the decisions of the jury and not the result of the exercise of the judgment of the court. As was said in *Phipps* v. *Superior Court*, 32 Cal.App.2d 371, 375 [89 P.2d 698]:

"If the court had directed the entry of a judgment wrong in law, it could not be corrected summarily (*McKannay* v. *McKannay*, 68 Cal.App. 701 [230 P. 214]), but if the entry of judgment was made without judicial direction and was not in conformity with statutory provision, the court had an inherent right to cause the records to reflect the limitation of the legislative pronouncement; in other words, to make the judgment conform to the verdict rendered. The trial court had a right to construe the verdict. (*Snodgrass* v. *Hand,* 220 Cal. 446 [31 P.2d 198].) This right continued 'regardless of lapse of time' to any period within which it would be necessary to interpret the verdict. (*McKannay* v. *McKannay, supra.*) A *nunc pro tunc* order to make definite and clear the terms of the verdict was a proper method of procedure. (*Lauchere* v. *Lambert,* 210 Cal. 274 [291 P. 412].)''

Subsequently, appellants herein made a motion for a new trial. In ruling on this motion the court made its order in part as follows: "The motion of defendants White and Anderson for a new trial is granted unless plaintiff within five days from the date hereof files with the clerk of this court his consent in writing to the making and entry of the following order, to-wit:

"It is ordered that the judgment entered May 4, 1948, in Book 1915, page 322, be and the same is hereby amended nunc pro tunc as of May 4, 1948, to read as follows:

"It is ordered, adjudged and decreed that plaintiff, Roger M. Aitken, have and recover from defendants C. H. Anderson and W. W. White, the sum of $4,000.

"It is further ordered, adjudged and decreed that plaintiff, Roger M. Aitken, have and recover from defendant Ray Borders the sum of $10.00.

"In the event plaintiff, within five days from the date

hereof, files with the clerk of this court his consent in writing as aforesaid, the motion for a new trial is denied.''

Respondent herein filed his consent to the making of the foregoing order and the court ordered that the judgment be amended *nunc pro tunc* as above set forth and denied appellants' motion for a new trial.

The general rule is that a jury cannot apportion damages between joint tort feasors. Under the authorities, such a verdict should be sent back for amendment or correction by the jury. The trial court should have done so in this case, but did not, and that brings us to an aspect of the matter about which there is some difference of opinion and procedure. What must be done with such verdicts? In but very few jurisdictions are such verdicts held to be absolutely void. In most jurisdictions rules are followed which avoid the necessity of granting a new trial or reversing the judgment on appeal on this ground. We are inclined to the view that while the attempted apportionment was wrong, such a defect can be cured either by the trial court or by the appellate court without granting a new trial. Therefore, the trial court could with propriety and logic allow the verdict as to appellant White to stand and reduce the verdict as to appellant Anderson to $4,000, thereby allowing respondent a joint and several judgment against the two for $4,000. This is no infringement upon the constitutional rights of the litigants to a trial by jury. Merely the form of the verdict was wrong, and the trial court did not trespass upon the province of the jury in correcting that defect in form and ordering such judgment as should have been properly entered upon the verdicts. (*Dextone Co.* v. *Building Trades Council,* 60 F.2d 47; *Ohio Valley Bank* v. *Greenbaum Sons Bank & Trust Co.* (4th CCA), 11 F.2d 87, 90; *Whitney* v. *Tuttle,* 178 Okla. 170 [62 P.2d 508, 510]; *Weddle* v. *Loges,* 52 Cal.App.2d 115, 119, 120 [125 P.2d 914]; *Phipps* v. *Superior Court, supra.*) Examination of the form of the verdicts returned in the instant case induces the reasonable inference that upon the issues presented the jury found for the plaintiff, fixing the damages to which he was entitled in the aggregate to the sum of at least $6,000, but their attempt to assess a greater amount against one defendant than the other may be treated as mere surplusage. (*Weddle* v. *Loges, supra,* p. 119.) In the case of *Oldham* v. *Aetna Life Insurance Co., supra,* relied upon by appellants, no attempt was made, as here, to correct the verdict and enter a proper judgment. It is therefore manifest that under the circumstances attending

the case at bar appellants were not prejudiced by the entry of the judgment ordered by the court. It reduced the amount of the judgment to a total of $4,000 against the appellants jointly. As a result of the court's ruling each appellant has been subjected to a smaller judgment than would have been entered against him had a joint verdict been returned. The action of the trial court in ruling on the motion for a new trial was proper, and affords no ground for reversal of the judgment.

Appellants next urge that the court erred in refusing to permit them to introduce into evidence a report from the Pinkerton Detective Agency concerning respondent and one George Sheldon, the latter of whom, according to information in the possession of appellants, had been seen with respondent in a café and in Brock and Company's store that morning. This report was sent to appellants prior to and on the day of respondent's arrest. The ruling of the court was erroneous. In considering the question of probable cause upon the part of appellants to arrest respondent, the court is to look only at the facts and circumstances presented to appellants at the time they acted. The detective agency report was not admissible as to the truth of its contents, but on the question of whether it contained such information as would tend to show the good faith or probable cause on the part of appellants in arresting respondent. The reasonable ground for the suspicions of appellants was an issue in the case. Respondent's reputation and any prior acts of misconduct similar to the one of which he was suspected were receivable in evidence as affecting appellants' grounds of suspicion. The statement in question was relevant to a decision by the court as to the existence or nonexistence of probable cause, and in that regard was not violative of the hearsay rule. (*Smith* v. *Whittier,* 95 Cal. 279, 293 [30 P. 529]; *Werner* v. *State Bar,* 24 Cal.2d 611, 621 [150 P.2d 892]; 6 Wigmore on Evidence (3d ed.) § 1766, p. 177; *People* v. *Radley,* 68 Cal.App.2d 607, 609 [157 P.2d 426]; *People* v. *Kilvington, supra,* p. 93; 2 Wigmore on Evidence (3d ed.) § 258, p. 78; *People* v. *Kynette,* 15 Cal.2d 731, 754 [104 P.2d 794].)

In view of the foregoing conclusions which necessitate a reversal of the judgment and setting the case at large, it becomes unnecessary to consider or pass upon other contentions advanced by appellants, including their claim that the court erred in denying their motion for satisfaction of judg-

ment as to them upon payment into court by defendant Ray Borders of the sum of $10 sought to be apportioned as his share of the damages awarded respondent.

The judgment appealed from is reversed and the cause remanded for a new trial.

Doran, J., and Drapeau, J., concurred.