[Civ. No. 21788. Second Dist., Div. One. Aug. 16, 1956.]

BEVERLY JOY TROWBRIDGE, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Sydney M. Williams and Morton R. Goodman for Petitioner.

A. L. Wirin and Marshall Ross as Amici Curiae on behalf of Petitioner.

S. Ernest Roll, District Attorney, Jere J. Sullivan, Fred N. Whichello and Lewis Watnich, Deputy District Attorneys, for Respondent.

FOURT, J.—By an information the petitioner was charged with possessing flowering tops and leaves of Indian hemp (marihuana) in violation of section 11500 of the Health and Safety Code. Her motion to set aside the information on the ground that the evidence admitted against petitioner in the preliminary hearing was not legally admissible, and that the evidence was insufficient to support the information, was denied. She now seeks a writ of prohibition to prevent her trial.

An alternative writ of prohibition was issued by this court, a hearing was held and the writ was granted (*Trowbridge* v. *Superior Court*, (Cal.App.) 299 P.2d 436). A petition for rehearing was filed by the respondent and answered by petitioner. This court granted the petition for rehearing.

A résumé of the testimony, insofar as it pertains to the questions involved in this case, is as follows: Rudolph S. Pena testified that he was a police officer of the city of Los Angeles, assigned to the Narcotic Division, and that he arrested the defendant February 17, 1956, at about 2 o'clock a. m. at 936½ Seward Street. He stated that the facility at the above address was a garage apartment, located on the back of the lot. About an hour before the arrest he had received information that the defendant, who was described to him as a female Caucasian about 21 years old, about 5 feet 2 inches tall, with black hair, driving a green 1950 Nash automobile, and living

at the above mentioned address, was in the habit of keeping marihuana in her apartment; further, that on a day·or two prior to this, the informer had seen marihuana in the apartment. The officer testified that he went to the address and was there for about 15 minutes before the arrest of the defendant. He stated that he was acquainted with the informer and had used information supplied by the informer on two or three other occasions. He was asked if the information supplied had usually been correct, and he answered that it had been.

As a result of the information received, the witness went to the location and as he and his associate officer climbed the stairs they looked in the garage and observed that there was nothing there. They went up onto the north rear part of the porch and, after about five or ten minutes, heard a car come in the driveway. They saw the defendant and a young man, who they later learned was Philip Bedrosian, run up the stairs. The defendant opened the door, and just as she opened it, the officers stepped up and said, "We are police officers. You are under arrest." Defendant said, "For what?" The witness answered, "For narcotics." She then laughed and said, "You are kidding." The witness said, "No." She then sat down (apparently inside the apartment) and the witness asked, "Can I come in?" and she said, "Yes, of course." The witness said, "Do you have any marijuana in the house?" and defendant replied, "I don't know anything about any marijuana." The witness then said, "Well, we are going to look around anyway," and defendant said, "Go ahead. You won't find anything."

The officers proceeded with their search. The witness picked up a white leather jacket which was lying over the arm of a couch, looked into the pocket and saw what appeared to be marihuana. Defendant's attention was called to the substance and she said she didn't know what it was. The material in the pocket was then packaged and marked by the witness. The witness then started into the kitchen, and as he did so, the defendant stood in front of him and said, ". . . I never use the kitchen." The witness then said, "That is beside the point. I would like to go in if you don't mind. You can stand right here and watch everything I do."

In the kitchen the witness located in a trash basket a newspaper folded up, inside of which were some large stems. There were some loose flakes of marihuana on the bottom of

the basket. As it was found the witness showed it to the defendant and said, "What about this?" and she replied, "What is it?" and he said, "You know perfectly well what it is. How did it get here?" She thereupon replied, "I don't know what it is." The search continued and the carpet sweeper was turned up and opened, and seeds and some marihuana debris were noticed by the witness. She was asked to explain the presence of the material and her answer was, "I don't know."

During the search, Officer Walsh, the partner of the witness, came up with a bottle which was marked "Schilling," which had been located in a chest of drawers. Walsh said, "Whose is this?" and the defendant said, "It is mine, I guess." Inside of the bottle was a small amount of what appeared to be marihuana, and as Walsh opened it, she said, "I don't know whose it is."

The witness then went to a closet where there was another white jacket and the pockets were checked and some debris removed and put into a package. The debris contained material resembling marihuana.

The defendant was asked if she had anything in the garage, and she said, "No, I don't even park my car down there." The witness stated, "You don't mind if I look around down there?" and she said "No, go ahead." The garage was searched, and in plain view, in a box under an overstuffed chair, was a newspaper in a plastic bag which contained marihuana. In each instance where marihuana was found, it was packaged and specially marked by the officer.

On *voir dire* examination by counsel for the defendant, the witness stated that he had first heard about the defendant an hour before the arrest; further, that they, the officers, had gotten to the apartment or facility at about 1:45 o'clock a. m., and the defendant arrived at about 2 a. m. The witness put the defendant under arrest and she made no protest as to the witness coming into the apartment. The witness did not have a search warrant nor a warrant for the arrest of the defendant. A thorough search was made once the officers were in the house. The witness had never heard of the defendant before the evening of the arrest and the search, and the only information the officer had was the information given to him by the informer.

Later, when on the way to the police station, and at the station, the witness talked with the defendant. Among other

things, he said, "You certainly made it hard for us," and the defendant said, "Why should I tell you anything?" When asked for an explanation for the presence of what appeared to be marihuana in the apartment, she said, "Anybody could have put it there. . . ." The witness said, "How about the stuff in the jacket?" and her answer was, "Well, my girl friend probably put it in there." When inquiry was made as to who and where the girl friend was the defendant did not disclose any name and said she did not know where she could be found. When asked about the second jacket in the closet, she stated, ". . . anybody could have put the stuff in there."

The transcript further indicates that the packaged items, prepared by the officers at the time of the arrest and search, were examined by a chemist from the police department, and in each instance, the chemist stated that the substance in the packages was or contained marihuana.

We are of the opinion that the arrest was justified, lawful and proper.

█ It is settled that reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would necessarily be admitted at the trial on the issue of guilt. (*People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535]; *Brinegar* v. *United States*, 338 U.S. 160, 171-176 [69 S.Ct. 1302, 93 L.Ed. 1879]; *United States* v. *Li Fat Tong*, 152 F.2d 650, 652; *Aitken* v. *White*, 93 Cal. App.2d 134, 145 [208 P.2d 788]; *Cook* v. *Singer Sewing Machine Co.*, 138 Cal.App. 418, 422-423 [32 P.2d 430]; *Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36].)

It was said in *People* v. *King*, 140 Cal.App.2d 1, 6 [294 P.2d 972]:

" 'The term, reasonable or probable cause, has been defined: "By 'reasonable or probable cause' is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty." (*In re McCarty*, 140 Cal.App. 473, 474 [35 P.2d 568].)

" 'The term, probable, has been defined as meaning "having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (*Ex parte Heacock*, 8 Cal.App. 420, 421 [97 P. 77].)' (*People* v. *Novell*, 54 Cal.App.2d 621, 623-624 [129 P.2d 453].)"

Penal Code, section 836, provides as follows:

"A peace-officer may make an arrest in obedience to a

warrant delivered to him, or may, without a warrant, arrest a person:

. . . . . . . . . . . . . .

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. . . ."

In the instant case there is nothing to indicate that the informer was unreliable, in fact, the exact opposite appears, namely, that the informer was reliable insofar as information given to the police was concerned.

 The informer told the policeman, about an hour before the arrest, that the defendant (describing her accurately) lived at a certain address and that it was her habit to keep marihuana in her apartment, and that a day or two previously the informer had seen marihuana in the apartment. The policeman was acquainted with the informer and used information supplied by the informer on two or three other occasions. It is difficult to see how the officer could have had much more information at his disposal under the circumstances, unless he, the officer, had personally observed the marihuana in the apartment.

We are of the conclusion that the search and seizure following the arrest were legal and proper.

 The evidence discloses, without question, that the defendant exercised control and dominion over the premises. She opened the door in the presence of the officers and went into the apartment. In *People* v. *Dixon,* 46 Cal.2d 456 at pages 458-459 [296 P.2d 557], the court said, ". . . if . . . reasonable cause is shown for the entry of defendant's apartment and her arrest (Pen. Code, §§ 836, 844; citing cases), the contemporaneous search of the garage, would be a lawful search as an incident to that arrest since the garage was on the premises and under defendant's control. (Citing cases.)"

In *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40], among other things, the court said, at page 162: "While the Cahan case held that 'evidence obtained by police officers in violation of federal and state constitutional prohibitions against *unreasonable* search and seizure is inadmissible,' it did 'not purport to inhibit the right of law enforcement officers to conduct a *reasonable* search and seizure incident to a valid arrest.' (*People* v. *Coleman,* 134 Cal.App.2d 594, 599 [286 P.2d 582].) It is further said in the Coleman case, pages 599-600: 'It is well settled that a search without a warrant is valid where it is incident to lawful arrest, if it is reasonable

and made in good faith; and that a seizure, during such a search, of evidence related to the crime is permissible. (Citing cases.) In the case last cited [*Agnello* v. *United States,* 269 U.S. 20, 30 (46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409)], the court succinctly stated: ''The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime . . . is not to be doubted.'' There is nothing in the language, logic or rationale of the Cahan case, where the search and seizure was accomplished in violation of constitutional guaranties, which is in conflict with the above principle, which has prevailed not only in California and the federal courts, but in our sister states. (Annos., 32 A.L.R. 680, 51 A.L.R. 424, 74 A.L.R. 1387 and 82 A.L.R. 782).' ''

In this case there is not the slightest indication that the officer was proceeding in any other way than that which appeared honest, reasonable and proper to him—there is no evidence that he was motivated by any grudge or any desire to harass the defendant.

The officer had confidence that the informer was giving him correct information, and as on other and previous occasions, it developed in this case that the informer was correct. This is not a case where there was a mere surmise or a bare suspicion that the defendant had marihuana; it was not just guesswork, speculation and conjecture. The informer stated positively and without reservation that it was the habit of the defendant to have marihuana in her apartment and that he, the informer, had himself seen marihuana at the apartment of the defendant a day or two before. In coming to a conclusion in the matter, the officer necessarily had to use some judgment based on what information he had. We cannot say that he exercised bad judgment and that he was wrong in coming to the conclusion and belief that the defendant had marihuana in her possession in her apartment.

In the case of *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], the officers had a valid warrant for the arrest of the defendant, who was charged with having in his possession forged stamps. The officers arrested the defendant in his place of business and thereupon searched, without a search warrant, the desk and file cabinets therein, from which they seized a number of such stamps. The evidence was admitted over the objection of the defendant. The

court held that under the circumstances the search was lawful, as an incident to a legal arrest. And further, that assuming that the warrant of arrest was not sufficient to authorize the arrest for the possession of the forged stamps, the arrest was held, nevertheless, to be valid, because the officers had probable cause to believe that a felony was being committed in their presence. The court said, at pages 657, 658, 659 and 660 [94 L.Ed.] :

"It is unreasonable searches that are prohibited by the Fourth Amendment. *Carroll* v. *United States*, 267 U.S. 132, 147 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]. . . . It was recognized by the framers of the Constitution that there were reasonable searches for which no warrant was required. The right of the 'people to be secure in their persons' was certainly of as much concern to the framers of the Constitution as the property of the person. Yet no one questions the right, without a search warrant, to search the person after a valid arrest. The right to search the person incident to arrest always has been recognized in this country and in England. *Weeks* v. *United States*, 232 U.S. 383, 392 [34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B 834]. . . . Where one had been placed in the custody of the law by valid action of officers, it was not unreasonable to search him.

" . . . . . . . . . . .

"Decisions of this Court have often recognized that there is a permissible area of search beyond the person proper. Thus in *Agnello* v. *United States*, 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409] . . . this Court stated:

" 'The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted.'

"The right 'to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed' seems to have stemmed not only from the acknowledged authority to search the person, but also from the long-standing practice of searching for other proofs of guilt within the control of the accused found upon arrest. *Weeks* v. *United States*, 232 U.S. 383, 392 [34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B 834]. . . . It became accepted that the premises where the arrest

was made, which premises were under the control of the person arrested and where the crime was being committed, were subject to search without a search warrant. Such a search was not 'unreasonable.' (Citing cases.)

". . . . . . . . . . . .

". . . In the instant case the search was not general or exploratory for whatever might be turned up. Specificity was the mark of the search and seizure here. There was probable cause to believe that respondent was conducting his business illegally.

". . . . . . . . . . . .

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. *Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374]. . . . Reasonableness is in the first instance for the District Court to determine. We think the District Court's conclusion that here the search and seizure were reasonable should be sustained because: (1) the search and seizure were incident to a valid arrest; (2) the place of the search was a business room to which the public, including the officers, was invited; (3) the room was small and under the immediate and complete control of respondent; (4) the search did not extend beyond the room used for unlawful purposes; (5) the possession of the forged and altered stamps was a crime, just as it is a crime to possess burglars' tools, lottery tickets or counterfeit money.

"Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable, as previously concluded.

". . . . . . . . . . . .

"A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a sine qua non to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to

close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.

". . . The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

Also, as said in *United States* v. *Pisano*, 193 F.2d 361, 363:

". . . Searches and seizures incidental to an arrest but without search warrants are not necessarily unreasonable but are, in the absence of unusual circumstances, entirely reasonable. The right to search the place where the arrest is made and to find and seize things connected with the crime as its fruits or as the means by which it is committed stems not only from the authority to search the person but also from the long standing practice of searching for other proofs of guilt within the control of the accused upon arrest. *Weeks* v. *U.S.*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. Consequently the premises where a valid arrest is made, under the control of the person arrested, are subject to search without a search warrant. Such a search is not unreasonable. *United States* v. *Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 and cases there cited. The only essential of validity of a search incidental to an arrest is that it be made in connection with a valid arrest. If the arrest is valid then a search of the immediate premises where the defendant is arrested is reasonable. The decisive question is not whether a search warrant could have been procured but whether the search made was reasonable and that, in turn, in the absence of exceptional circumstances, depends upon whether the arrest was valid."

 It is contended that because the officers had no personal, independent knowledge that the defendant had committed a felony, and because there was only one informer, and such informer had only been "usually" reliable on not more than three occasions, therefore, by the nature of things, there

could not possibly be sufficient information arise from such a state of affairs to warrant a reasonable arrest and seizure. A short answer to any such contention is that it is not the number of informers involved but the reliability of the informant and the reasonableness of the information supplied which should count the most with the officer in making up his mind what to do. Certainly, if the officer himself had personal, independent knowledge of the fact that the defendant had marihuana in her possession, and had therefore committed a felony, it was his plain duty to arrest her forthwith.

It was also contended that there was no good reason why the officers should not have waited and secured a search warrant in this particular case. No one would fairly argue that a magistrate would have refused to issue a warrant if the same facts and statements had been presented to him as were presented to the officer. ■ It was recently appropriately said in *People* v. *Allen,* 142 Cal.App.2d 267, at page 280 [298 P.2d 714]:

". . . Merely because the officers could have obtained a search warrant does not render illegal their seizure without one. Even though officers have time to procure a search warrant to search the person or premises of a suspect, if his arrest is justifiable, a search of his premises and his person is reasonable as incidental to a lawful arrest. (*United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653]; *Trupiano* v. *United States,* 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663].) ■ The Fourth Amendment does not forbid all searches, but only unreasonable searches. The authors of the Bill of Rights did not suggest or imply that when law enforcing agencies have learned that a person has committed a felony, they must await the convenience of the offender before moving into his lair. They were wrestling with the problems that had arisen from the arbitrary searches by the minions of an arbitrary despot. They had not conceived of the difficulties to be encountered by a generous government in dealing with arbitrary criminals in a complex society with countless avenues whereby to secrete the evidences of their crimes. But clearly they did reckon upon the apprehension of criminals and did not aim to inhibit prompt, reasonable searches to the end that after the robber has been arrested the officer might without a search warrant make a search as an incident of the arrest. (*United States* v. *Rabinowitz, supra,* p. 64.) While the court condemned 'general, explora-

tory searches,' it did not suggest as violative of the Constitution a reasonable search for specific evidence at the locale of the crime.''

We are of the conclusion that the arrest was lawful, the search was lawful and contemporaneous with and incident to the lawful arrest, and the seizure was lawful and that all of the evidence was properly admitted.

The alternative writ of prohibition is discharged and a peremptory writ is denied.

White, P. J., concurred.

NOURSE (Paul), J. pro tem.*—I dissent. For the reasons set forth in the opinion of this court originally filed herein as reported in (Cal.App.) 299 P.2d 436, I would grant the writ sought by the petitioner.

Petitioner's application for a hearing by the Supreme Court was denied October 15, 1956. Carter, J., Traynor, J., and Schauer, J., were of the opinion that the application should be granted.

*Assigned by Chairman of Judicial Council.