[Crim. No. 6051. Second Dist., Div. One. Feb. 3, 1958.]

## THE PEOPLE, Respondent, v. ELNORA RIXNER, Appellant.

John J. Bradley and Max Solomon for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was accused of a violation of section 11500 of the Health and Safety Code in that on or about October 10, 1956, she had in her possession a preparation of heroin. It was further alleged that she had suffered a prior conviction of a felony, to wit, sale of heroin, in the United States District Court for the Southern District of California, for which she served a term of imprisonment in a federal prison.

Defendant pleaded not guilty and denied the prior conviction. Trial by jury was duly waived and the People's case was submitted on the transcript of the preliminary examination. Defendant testified in her own behalf. Defendant was adjudged guilty, the prior conviction was stricken from the record, and she was sentenced to state prison. From the judgment of conviction, and from the order denying her motion for a new trial, defendant prosecutes this appeal.

Concerning the factual background surrounding this prosecution, the record reflects that on the basis of information received in person by Police Officer Pena on October 9, 1956, and by telephone on the day following, from a confidential police informant, to the effect that defendant was selling heroin at her home at 1622 Ridgeley Drive, and that on the date of the telephonic information, had heroin in her possession, Officers Pena and Walsh went to defendant's home on October 10, 1956, at about 10 a. m., and placed it under observation. Officer Pena had received information three times before from this informant and considered him reliable. The prior information resulted in two arrests for narcotic violations which subsequently terminated in one conviction and one acquittal. Officer Pena saw a man, William Cavitt, known to him as a narcotic peddler, leave the house. He

conversed with this man, searched him and found no narcotics. The officer then approached defendant's home, knocked on the door, which was open, and entered. When he knocked on the door, Officer Pena testified he thought he heard the defendant say, "Come in."

Officer Pena identified himself and stated that the defendant was under arrest for possession of narcotics. At this point Officer Pena observed that the defendant held a piece of cellophane in her left hand, and he requested that she show him what she had there. The defendant did not comply with the request, but instead, made a motion toward her mouth, which was thwarted by the officers grabbing her hands. The defendant then threw the bindle to the floor where Officer Walsh picked it up. Officer Pena asked the defendant if there was "any more in the house," to which she replied, "No, that is all there is." Defendant further stated, "I sniff a little bit and there is a little bit in that paper and that is all I have."

After the officers searched the defendant's home Officer Pena asked defendant if she would like to tell him about her peddling to which she replied, "I am not peddling. I have told you that before. All I do is sniff a little bit. That is all I have."

James H. Carter, a police officer of the city of Los Angeles, assigned to the Scientific Investigation Division, and whose qualifications as an expert forensic chemist were stipulated, testified that contents of the cellophane taken from defendant consisted of two grains of heroin.

Sworn as a witness in her own behalf, defendant testified that on the day of her arrest she went to answer the telephone in her kitchen; that her dog barked and she told the lady on the phone someone was at the door; that before she could get away from the phone two officers came in and grabbed her by the arm. That she never saw the cellophane and contents before the officers entered her home. That her first knowledge of it was when the officers handcuffed her and showed it to her. That she did not drop the cellophane to the floor. Defendant also denied that she stated to the officers, "No, that is all there is," or "I sniff a little bit, and there is a little bit in that paper, and that is all I have."

Appellant's sole ground for reversal is that there was not probable cause for her arrest in that the police officer's reliance on the information received by him was unreasonable.

That therefore, the evidence presented by the prosecution was illegally obtained and inadmissible.

Appellant asserts that "The prosecution justifies the action of the officers upon information received from an *unknown* informer to the effect that appellant was peddling heroin out of the house." (Emphasis added.) But such is not the case. The record clearly establishes that the informer *was known* to Officer Pena and had, on three prior occasions, given information to him.

It is appellant's next contention that the source of the information upon which the officer acted was unreliable and furnished no probable cause for an arrest, in that such prior information resulted in two arrests, and only one conviction. With this contention we cannot agree. ▆ In *Trowbridge* v. *Superior Court*, 144 Cal.App.2d 13, 16 [300 P.2d 222], "Probable cause" was defined as meaning that which "inclines the mind to believe, but leaves some room for doubt."

▆ An unbroken line of decisions hold that an officer is justified in making an arrest acting solely upon information furnished by an informant where the latter is known to the arresting officer and is in good faith believed by him to be trustworthy and reliable. (For a partial list of such cases see *Lorenzen* v. *Superior Court*, 150 Cal.App.2d 506, 509 [310 P.2d 180].) ▆ And, as stated in the case just cited, at page 510, the question of whether an informant possesses such reliability as to justify an arrest without a warrant in reliance on the information, presents a factual question to be determined by the trial court in the exercise of a sound discretion. (See also *People* v. *Garnett*, 148 Cal.App.2d 280, 284 [306 P.2d 571]; *Trowbridge* v. *Superior Court, supra,* p. 22.) With the foregoing rules in mind, we find in the instant case the fact that the informer was known to Officer Pena; had given him information on three prior occasions; that the officer believed him to be reliable; and finally, that the trial court in the exercise of the sound discretion vested in it, found that the officer's reliance on the information was reasonable.

Appellant urges that "The fact the officer knocked on the door and entered after hearing what he thought was 'Come in' supports the logical inference that the officer himself did not have a trust in his informer because of past experience and did not believe he had reasonable cause to arrest appellant at the time he went to her house." We are unable to follow the logic of this reasoning because we know of no code section or case authority which requires an officer to use force in

entering a place to make an arrest, either with or without a warrant.

Appellant's final contention that, "If the officer had received no prior information from the same source he would be unable to justify acting on such information alone in making an arrest or unlawful entry" is, to say the least, open to question. In *Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36], the identity of the informer was unknown to the arresting officers and the latter had no previous experience with him to indicate that his information was reliable. The information given to the police was that a large bookmaking operation was in progress in a certain bar; that a certain waitress would be found standing near the telephone, and that she accepted bets from customers. When the police arrived they found the circumstances to be the same as narrated to them by the informer. The waitress was standing by a pad and pencil and had slips of paper in her hands. When asked what she had in her hand she attempted to conceal it. In denying a writ to restrain the superior court from proceeding further with a prosecution of the case, our Supreme Court said, at pages 295, 296: "Although petitioner's conduct observed by Officer Sunday in the bar would not of itself constitute reasonable cause to believe she was committing a felony, it was sufficient to justify Officer Sunday's reliance on the information given her of petitioner's bookmaking. Under these circumstances the evidence before the magistrate was sufficient to justify the conclusion that a violation of Penal Code, section 337a, had been committed, that Officer Sunday had reasonable cause before the search and seizure to believe that petitioner was guilty thereof, and that therefore the search, seizure, and arrest were lawful. (Citing cases.)" (See also *People* v. *Holguin*, 145 Cal.App.2d 520, 522, 523 [302 P.2d 635].)

█ In the case now engaging our attention the informant was not an unknown or mere anonymous "tipster," but on the contrary, was *known* to Officer Pena and had, on three prior occasions, supplied him with information. Since under the authorities last above cited, every anonymous information when corroborated may afford reasonable or probable cause to justify an arrest, we are persuaded that in the instant case, where the information was not from an anonymous source, the fact that the informant directed the officers to the correct address and that upon arrival thereat, Officer Pena saw a man known to him as a narcotic peddler, leave appellant's home,

furnished sufficient corroboration to sustain a conclusion that there existed probable cause for arrest of appellant.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Drapeau, J.,* concurred.

FOURT, J.—I reluctantly concur:

This cause is one of the ever growing number of cases, arising particularly in Los Angeles County, where the trial judge, in the face of a certified copy of a prison record of the defendant showing that the defendant was convicted of a felony and served a term in prison therefor, and a sworn admission on the part of the defendant that he or she was previously convicted of a felony and served a term in prison therefor as charged in the information, either finds the prior conviction to be not true or strikes the same and sentences the defendant as a first offender.

In this case in the first instance the judge found "the defendant guilty of the charge, with a good prior." Counsel for the defendant then asked the judge to withhold decision on the matter of the prior, and asked "leave to file a written application for probation."

At the time of hearing the report of the probation officer and pronouncement of judgment, counsel for the defendant represented to the court that the defendant was sick and that she had lost a part of one finger in an automobile accident, and further that the amount of heroin found in her possession was only a small amount, namely two grains, and therefore the court should dismiss the prior conviction of sale of heroin and give her probation.

The defendant, in a letter to the court, indicated, with reference to her health, that if granted probation she intended to start a restaurant and eating place. A doctor who had examined the defendant wrote a letter dated May 20, 1957, in her behalf to the effect that insofar as her hand or finger was concerned she would have full use thereof in three months.

The court, upon the urging of defendant's counsel, thereupon stated, "The court will dismiss the prior, strike the prior in the interest of justice," and then denied the application for probation and sentenced the defendant to the state

---

*Assigned by Chairman of Judicial Council.

prison, not as a recidivist, which she was, but as a first offender.

The record before the judge at the time of sentencing disclosed that in 1950 the defendant was charged with a violation of section 11500, Health and Safety Code, and pleaded guilty thereto, and was sentenced to the county jail for one year, and that the sentence was then suspended and she was put on probation for three years and fined $100. The probation so granted was ultimately revoked because of the defendant's involvement in other later narcotic offenses, and the sentence which was then imposed ran concurrently with the sentence imposed in a federal court. In 1953, in the United States District Court in Los Angeles County, she was charged in Count I with concealing five grains of heroin, in Count II with selling eight grains of heroin, and in Count III with selling 12 grains of heroin. She entered a plea of guilty to the first two counts, and the third count was dismissed. She was then sentenced to serve three years in the federal prison. Her parole expired July 13, 1956. She was arrested on the present charge October 10, 1956, and as heretofore set forth, was then charged with but one prior conviction.

The officer testified: "I received information that this defendant, who was known to me as Eleanora Glover, had recently moved to this address at 1622 Ridgely Drive, and she was peddling heroin out of the house. On this date of the arrest I received a call approximately an hour before I went there, informing me that she had heroin in her possession at that time." The defendant stated to the officer, ". . . I sniff a little bit and there is a little bit in that paper and that is all I have."

The husband of the defendant admitted to the use of narcotics, but stated that he was "not hooked yet." The fact of the matter is that he had theretofore been sentenced to the state prison for involvement in narcotics offenses and had just been released from jail in Alameda County on October 10, 1956, after serving 90 days as an addict.

The record further disclosed that the defendant had previously worked as a housemaid and the husband as a painter, yet they lived in an $18,500 house and owned other property of the value of about $15,000, and she had a substantial sum of money in her purse at the time of her arrest.

As I view it, the defendant, first of all, was not eligible for probation (Pen. Code, § 1203; Health & Saf. Code,

§ 11715.6), and no useful purpose could have been served by permitting her, as an ineligible defendant, to apply for probation. Secondly, the Health and Safety Code specifically sets forth (§ 11712):

"*[Imprisonment in county jail or State prison.]* Any person convicted under this division for having in possession any narcotic, or of violating the provisions of Section 11530 or 11557 shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years.

"*[Effect of prior conviction.]* If such a person has been previously convicted of any offense described in this division or has been previously convicted of any offense under the laws of any other state or of the United States which if committed in this State would have been punishable as an offense described in this division, the previous conviction shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or is admitted by the defendant, he shall be imprisoned in the state prison for not less than two years nor more than 20 years."

The defendant in this case clearly demonstrated by her conduct that she and her husband used narcotics, and that she, from time to time, was engaged in the sale thereof. Less than three months had expired from the federal parole to the date of her present arrest. In other words, she was barely out of one transaction until she was into another.

It appears to me that to state that it is in the interests of justice to strike a prior conviction under such circumstances is to distort the language to the breaking point. No good purpose is served by treating recidivist narcotic offenders as anything other than just what they are. To grant their requests for lighter punishment in the face of a legislative determination and mandate to the contrary (1) aids in the further sale and use of illicit narcotics, (2) adds to the burdens of those whose duty it is to ferret out persons engaged in the illicit narcotics traffic, and (3) brings the administration of justice into disrepute.

Among other things, such a course of conduct makes for maladministration in the prisons, because it brings about a situation in which two inmates with identical records and identical offenses are treated entirely differently.

If every person is to be rendered his or her due, the courts

should measure and stand up to their responsibilities and render true justice.

It further appears to me that society as a whole should be considered in such matters. Any sentimentality brought into play in favor of a defendant ought to be measured against the anguish and disgrace brought to the users who secured their heroin from the defendant.

In my opinion, it is not "in the interest of justice" to treat a repeating narcotic violator as a first offender. It was once appropriately said, "There can be no greater injustice than to treat unequal things equally."