[Crim. No. 3512.   First Dist., Div. One.   Oct. 2, 1958.]

THE PEOPLE, Respondent, v. JAMES BATES, Appellant.

Harry A. Jackson, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Irving F. Reichert, Assistant District Attorney, for Respondent.

PETERS, P. J.—Defendant James Bates was charged and convicted, after a trial before the court without a jury, of illegal possession of heroin. Defendant appeals from the judgment of conviction. His basic contention is that the uncontradicted evidence of his guilt was secured by an illegal

search and seizure and was therefore inadmissible against him. There is no merit in the contention.

On and prior to September 16, 1957, one George Kostrikin had been under surveillance by the federal and county narcotic officers. Shortly before noon on September 16, 1957, the police observed defendant sitting in an automobile with one Swinger in front of a bowling alley on Mission Street, in San Francisco. Kostrikin entered the Swinger car, and that automobile was then driven about a block from the bowling alley and Kostrikin got out, walked back to his car and drove away. Bates and Swinger then also drove away. Later that afternoon Kostrikin was arrested for a narcotics offense.

The police knew where Kostrikin was living with one Nancy Francis. On the evening of September 16, 1957, four police officers proceeded to that apartment. One of the inspectors, Kerrigan by name, knew Miss Francis, and, when she came to the door, Kerrigan introduced her to the other officers and told her that they wanted to talk with her. Miss Francis invited the officers into the apartment. There was another unidentified young lady there.

It should be mentioned that Kerrigan was not a witness at the trial, but Daniel Casey and James Steffensen, narcotic agents, were. Casey testified that Kerrigan told the officers, in the presence of Miss Francis, that he had known her for several years, that she had cooperated with the police department in the past, and that her services had proven very reliable. The other officers, with the exception of Kerrigan, had had no prior experience with Miss Francis.

Both Casey and Steffensen testified that after the officers entered the apartment Miss Francis cooperated wholeheartedly with the police, and that no force or compulsion was used against her. Miss Francis was not placed under arrest.

Casey testified that he and Officer Kerrigan went into the kitchen of the apartment with Miss Francis. Kerrigan told her that Kostrikin had been arrested for a narcotic violation, and asked her if she would tell them what she knew about Kostrikin and his associates. Miss Francis stated that she would cooperate. In response to questions from the officers she stated that she knew James Bates, and knew that he was a runner or peddler for Kostrikin. She said that Kostrikin would give Bates narcotics on consignment and, after Bates sold them, he would bring the money to Kostrikin. She then stated that she knew that that very morning Bates had been given some narcotics by Kostrikin on Mission Street in front

of the Sportsman's Bowl. This was the very transaction observed by the officers earlier that day. Miss Francis also told the officers that Bates customarily kept the narcotics on his person and did not usually leave them at his residence. She did not know where Bates lived, but she did know that he spent a lot of time at Ray Swinger's house. She agreed to introduce an undercover agent to Bates in an attempt to develop a case against him.

At about this stage of the conversation the telephone in the apartment rang. Miss Francis answered it and agent Steffensen monitored the call by listening at the earpiece held by Miss Francis. Steffensen heard the voice at the other end of the line say: "This is Bates. I understand George has been busted. I have got stuff on me. What will I do with it?" The person also stated that he was calling from Swinger's house. At the direction of the officers Miss Francis told Bates to stay where he was and that she would call him back. At this time two additional officers had arrived, so that there were six officers in the apartment.

Bates testified and admitted that he had telephoned to Kostrikin's apartment that day and had talked with Nancy. He stated that he had learned that Kostrikin had been arrested and called to ask about him. He testified that Nancy told him that George was then out and would be right back. Bates asked Nancy to have George call Ray's house when he returned. He did not tell Nancy that he had some "stuff."

Miss Francis, who did not testify, had a police record and had been an addict.

The police officers then proceeded to Ray Swinger's house, the address of which was known to them. Mrs. Swinger came to the door and admitted them. From the door the officers could see Bates seated in a chair. The police came in and placed Bates under arrest. The chair in which he was sitting was searched and an envelope containing a hypodermic outfit and 19 bindles of heroin were found. Bates then stated: "I don't want to get these other people in trouble. That stuff is mine."

The officers did not have a warrant to arrest Bates or a warrant to search the Swingers' premises.

Appellant challenges the validity of his arrest and search, contending that the information gained from Nancy Francis was not a sufficient basis to constitute reasonable cause for the arrest without a warrant. Under Penal Code, section 836, subdivision 3, an officer may lawfully arrest a person without

a warrant when the officer has reasonable cause* to believe that the person has committed a felony. In the instant case we think the finding that reasonable cause existed is amply supported.

In the first place, it is now settled law that reasonable cause to justify an arrest or search may consist of information gained from others, and is not limited to evidence that would be admissible at the trial on the issue of guilt. (*People* v. *King*, 140 Cal.App.2d 1 [294 P.2d 972]; *Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36].) The test is, did the officer have reasonable cause to make the arrest— would a reasonable man, possessing the information possessed by the officer, reasonably believe that the person involved had committed a felony? This information may be, and usually is, evidence that would be hearsay on the issue of guilt. It may consist of information obtained from an informant known to the officer to be reliable and whom the officer in good faith believes to be trustworthy. (*People* v. *Rixner*, 157 Cal.App.2d 387 [321 P.2d 91], and cases there cited.) In most cases the informant must not only be known to the officer, but the officer must have had sufficient dealings with the informant to give him reasonable cause to believe that the informant is reliable and that the information given by him is truthful. It is only in the case of a pressing emergency that an arrest or search without warrants may be justified based upon information secured from an anonymous informant, or from an informant not known to the officer to be reliable. (*Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36].)

These rules are well settled. It is also well settled that in the absence of a pressing emergency, the officer may not properly arrest or search a person based upon information gained from an informant not known to the arresting officer, or, if known, not known from past experience to have been a source of tested reliable information. (*People* v. *Dewson*, 150 Cal.App.2d 119 [310 P.2d 162].) It is this rule that the appellant seeks to apply here. He correctly points out that the arresting officers, or at least those who testified, were Casey and Steffensen, and that they admitted that until they met Miss Francis in the apartment they did not know her nor had they any prior experiences with her. Appellant also

*For good definitions of "reasonable or probable cause" see *People* v. *King*, 140 Cal.App.2d 1, 5 [294 P.2d 972]; *Trowbridge* v. *Superior Court*, 144 Cal.App.2d 13, 16 [300 P.2d 222].

correctly points out that there was no pressing emergency. Hence, it is argued, the arresting officers had no reasonable grounds to make the arrest and search without a warrant.

The argument is unsound. The evidence shows that Officer Kerrigan had known Miss Francis for several years, and that he knew her to be a person who had been cooperative with the police in the past and who, on numerous occasions, had given information which had proved to be reliable. Officer Kerrigan, who was one of the officers present in the apartment and one of the arresting party, told these facts to Casey and Steffensen in the Kostrikin apartment in the presence of Miss Francis. Of course, had Kerrigan made the arrest based upon his knowledge and experience with Miss Francis, there could be little doubt that the trial court could have found that Miss Francis was a reliable informant. ██ The facts that Kerrigan was not called as a witness, and that Casey and Steffensen, who did testify, did not know Miss Francis, are immaterial. As long as the informer was known to one of the officers of the arresting party to be reliable, or as long as he communicated the knowledge he had to the other officers in the official line of duty, the rule of the Dewson case is satisfied.

██ . It should also be pointed out that the reliability of the informant may be shown not only by past experience with the informant but also may be substantiated by the proven accuracy of the information given by the informant and which the officers from other sources know is accurate. (*Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Holguin*, 145 Cal.App.2d 520 [302 P.2d 635].) In the instant case Miss Francis not only told the police that appellant was a runner for Kostrikin, but also that Kostrikin had made a delivery to appellant that very morning in front of the named bowling alley on Mission Street. That very morning these officers had observed appellant sitting in Swinger's car in front of that bowling alley, and they had seen Kostrikin enter that car, drive with the other two a short distance and then park, and had seen Kostrikin emerge from the car and go back to his own car, and then had seen both cars drive away. Miss Francis also told the officers that appellant could be found at Swinger's house. Appellant was found there. Thus, much of the information given by Miss Francis was corroborated by this information known by the officers to be correct. Thus, this is not a case like *People* v. *Goodo*, 147 Cal. App.2d 7 [304 P.2d 776], relied upon by appellant, where

none of the officers had any previous experience with the informer, and where the only actions of the defendant observed by the officers were non-suspicious actions. In the instant case the informant was known to one of the arresting officers to be reliable and that fact was communicated to the other officers, and several of the basic facts given by the informer were known by the arresting officers to be accurate from other sources of information.

It is also contended that under any rational interpretation of the evidence, it must be held that Miss Francis did not voluntarily give the information to the officers. It is pointed out that four officers arrived at her apartment, and shortly thereafter two other officers arrived, so that there were six officers in the apartment when she gave the officers the information. It is pointed out that Miss Francis was not produced as a witness. It is argued that the very presence of six officers in the apartment amounted to coercion.

■ Of course, coercion practiced on an informer is a factor affecting the credibility of the informer, but the present record supports the implied finding of the court that no coercion was practiced on her. The evidence is to the effect that Miss Francis, after being told of the arrest of Kostrikin, freely cooperated with the officers. She went into the kitchen with two of the officers and gave them the information upon which they acted. There is no evidence, or no inference from the evidence, except the fact of the presence of six officers, that Miss Francis was coerced. There is no evidence that she was threatened, placed under arrest, or promised leniency. All of the evidence is to the effect that she voluntarily and freely cooperated. Her name was divulged to the defense. So far as the record shows, the defense made no effort to produce her.

■ The only other point urged by appellant is that some of the information secured by the officers was illegally secured by the officers by monitoring the telephone call from appellant to Miss Francis. It is urged that information so obtained was inadmissible because illegally secured in violation of section 640 of the Penal Code and section 605 of the Federal Communications Act of 1934. (47 U.S.C.A., § 605.) These sections are not applicable where at least one of the participants to the telephone call consents to the overhearing of it by the police. (*People* v. *Malotte*, 46 Cal.2d 59 [292 P.2d 517].) In the present case it is a reasonable inference from the evidence that Miss Francis voluntarily consented to the

officers monitoring the call. Certainly there is no evidence to the contrary. Thus, the ruling of the trial court that the contents of the conversation were admissible is supported by the record.

The judgment appealed from is affirmed.

Bray, J., and St. Clair, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.