## UNITED STATES v. PISANO et al.

### No. 10427.

United States Court of Appeals
Seventh Circuit.

Dec. 5, 1951.

Major, C. J., dissented in part.

See also, 7 Cir., 193 F.2d 355.

Maurice J. Walsh, Morris G. Kaufman, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Joseph E. Tobin, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, FINNEGAN, and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

In a trial without a jury, defendants were adjudged guilty of violations of Section 2553(a) of Title 26 U.S.C. upon each of

two counts of an indictment charging, in the first, that they purchased narcotics not in or from the original stamped package and, in the second, that they received, concealed, bought and facilitated the transportation and concealment of certain narcotics after importation into the United States, in violation of Section 174, Title 21 U.S.C.A. Upon appeal, defendants urge that the court erred in (1) admitting evidence obtained in a search which they contend was unreasonable; (2) admitting fingerprint evidence, and, (3) denying the motion for acquittal as to Pisano. It is further insisted that the presumptions of the narcotic statutes do not extend to or include venue of purchases.

The testimony pertinent to the alleged invalidity of the search follows. On December 16, 1949, District Supervisor Arts and Agents Fields and Sojat of the Bureau of Narcotics of the Treasury, having been advised that an indictment had been returned against both defendants and that a warrant for their arrest had issued, proceeded to Ginnone's rooming house, where the latter met them at the door of the room which he occupied. They informed him that they were narcotic agents, exhibited such an officer's badge, and told him that an indictment had been returned against him and Pisano charging them with the sale of narcotics, that a warrant had been issued for his arrest and that he was under arrest. The officers then searched the room and a closet connected therewith. In the latter they found a small locked suitcase. When one of the agents asked Ginnone for the key, the latter proceeded to take it out of a pocket in an overcoat hanging in the closet and handed it to the agent. When the bag was opened, the officers found therein six envelopes of heroin, narcotic tablets in bottles, morphine, cellophane envelopes, a stapler and staples, a scale, some measuring spoons, knives, wrapping paper and sifters. A woman found in the room with Ginnone denied that she had access to or control over the suitcase and Ginnone declared it belonged to him.

█ Under the Fourth Amendment of the Constitution the people are protected from unreasonable searches. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. Searches and seizures incidental to an arrest but without search warrants are not necessarily unreasonable but are, in the absence of unusual circumstances, entirely reasonable. The right to search the place where the arrest is made and to find and seize things connected with the crime as its fruits or as the means by which it is committed stems not only from the authority to search the person but also from the long standing practice of searching for other proofs of guilt within the control of the accused upon arrest. Weeks v. U. S., 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. Consequently the premises where a valid arrest is made, under the control of the person arrested, are subject to search without a search warrant. Such a search is not unreasonable. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 and cases there cited. The only essential of validity of a search incidental to an arrest is that it be made in connection with a valid arrest. If the arrest is valid then a search of the immediate premises where the defendant is arrested is reasonable. The decisive question is not whether a search warrant could have been procured but whether the search made was reasonable and that, in turn, in the absence of exceptional circumstances, depends upon whether the arrest was valid.

█ Rule 4(c) of the Rules of Criminal Procedure, 18 U.S.C.A., provides that a warrant for an arrest shall be "executed by a marshal or by some other officer authorized by law"; that the officer need not have the warrant in his possession at the time of the arrest but that, upon request, he shall show it to the defendant as soon as possible, and that, if the officer does not have it in his possession at the time of the arrest, he shall inform the defendant of the offense charged and of the fact that a warrant has issued. In the present case the arresting officers were authorized by law to make arrests; they had been advised that an indictment had been returned and a warrant issued for Ginnone and that he had been charged with violation of the narcotic laws. Under the rule, it was not necessary that they present the warrant before pro-

ceeding to arrest, for they were clothed, by virtue of the indictment, with knowledge of a probable violation of the law and, under the rule, with the power to arrest. They advised Ginnone that he had been charged with illegal traffic in narcotics. Having searched the room where he was found, the officers took him in custody, holding him in the local jail until the next morning when he was delivered to the United States marshal, who formally served the warrant upon him. From all this, it is clear that the arrest was valid and in compliance with the statutes and criminal rules of procedure. Consequently, incidental to the arrest, the arresting officers were authorized to search the room where he was found and the closet connected therewith. The court rightfully overruled the motion to suppress the evidence.

■ Defendant Pisano insists that the court improperly admitted evidence as to his fingerprints found on the package containing narcotics and on wrapping paper found in the suitcase. The record is silent as to Pisano's arrest; there is no evidence whatsoever that his fingerprints were not properly taken. The duly qualified witness Sheehan testified that he took Pisano's fingerprints on December 16, 1949 and subsequently compared them with the fingerprints found on the two exhibits mentioned. We find nothing of record to indicate that the evidence was not properly admitted.

■ Pisano insists further, however, that when the evidence against him is considered, even taking it most favorably to the Government, it is not sufficient to support his conviction. In the course of the hearing on the motion to suppress the evidence, his counsel stated that the suitcase and its contents, while they were not in his physical custody or under his control when taken, were constructively in his possession at the time of the search. The clear meaning of this statement is that, though Pisano did not have actual physical possession of the seized articles, they were subject to his control in some manner, and this, says the Government, was an admission of an interest in them contributing to the other evidence bearing upon the question of his guilt. This may well be true, for constructive possession, as we understand it, means possession by another for one's behalf. However, irrespective of this admission, we think the other evidence submitted was sufficient to justify the finding of guilty. Thus, possession of any unlawful narcotic is sufficient to raise the presumption created by the statute and to place upon the accused the statutory burden of explaining such possession to the satisfaction of the jury. Pitta v. United States, 9 Cir., 164 F. 2d 601, 602; Ng Choy Fong v. United States, 9 Cir., 245 F. 305, certiorari denied 245 U.S. 669, 38 S.Ct. 190, 62 L.Ed. 539; Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Stoppelli v. United States, 9 Cir., 183 F.2d 391, 393, certiorari denied 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631. In the latter case, the court, after commenting that the fingerprint evidence was circumstantial, suggested that the precise question for decision was "Was it sufficient evidence to show Stoppelli 'to have or to have had possession'" adding: "The testimony of the fingerprint expert was sufficient to go to the jury if its nature was such that reasonable minds could differ as to whether inferences other than guilt could be drawn from it. It is not for us to say that the evidence was insufficient because we, or any of us, believe that inferences inconsistent with guilt may be drawn from it. To say that would make us triers of the fact. We may say that the evidence is insufficient to sustain the verdict only if we can conclude as a matter of law that reasonable minds, as triers of the fact, must be in agreement that reasonable hypotheses other than guilt could be drawn from the evidence. Curley v. U. S., 81 U.S.App.D.C. 229, [389] 160 F.2d 229, 230. * * *

"We are of the view that any possible objection to the expert's testimony would go to its weight. Its weight or credence was within the exclusive province of the jury to evaluate. The jury had the right to pass on the evidence. Felder v. U. S., 2 Cir., 9 F.2d 872, 875; Crono v. U. S., 9 Cir., 59 F.2d 339, 340. It could not justly be excluded entirely as being of no substance. * * *

"Furthermore, under the charging statutes, the sometimes troublesome elements of intent are not here involved, for possession alone is sufficient for conviction.

"We are not able to conclude as a matter of law that the jury, pursuant to the court's instructions, could not reasonably draw the inference of guilt from the fingerprint evidence. In fact, it is the strongest kind of evidence."

This language is applicable here.

■■ Pisano's fingerprints were found upon one of the packages containing narcotics as well as upon some wrapping paper found in the suitcase with the drugs. This means that he had had his hands upon the package and the paper at some time, in other words, that he had handled them, and, in order to do so, he must have had possession of them. These facts stand undisputed of record. Thus the undisputed and unexplained handling of the package by Pisano was sufficient to justify the court's finding of illegal possession. For us to speculate upon possible innocent explanations of his possession is not justified. We must weigh the evidence, not as the trial court but only to the extent necessary to determine whether it was sufficient to sustain the finding of guilty. Were we to substitute our judgment in this respect for that of the District Judge we would usurp the functions of the trier of the facts.

The contention that the statutory presumption does not extend to and include venue has been considered in U. S. v. Pisano and Ginnone, 7 Cir., 193 F.2d 355, a companion case, decided of even date herewith. What we said there, in this respect, is decisive of the issue here and need not be repeated.

■■■ Pisano also complains of the denial of the motion to suppress. One who has no proprietary or possessory interest in the premises searched or property seized may not have supressed the evidence obtained by a search and seizure even though they are violative of the rights of another. Daddio v. U. S., 2 Cir., 125 F.2d 924, 925; Jeffers v. U. S., D.C.Cir., 187 F.2d 498, 500. It follows that Pisano was in no position to complain of the search or the seizure. Fur-thermore, as we have decided, the motion was properly denied.

The judgments are affirmed.

MAJOR, Chief Judge.

I would affirm as to Ginnone but reverse as to Pisano. The sole proof in support of his conviction is the circumstance that his fingerprint appeared upon two exhibits, a piece of wrapping paper and a cellophane envelope found in a suitcase in Ginnone's room, and that the envelope at that time contained heroin. There was no proof as to any connection between the two defendants or that Pisano had any dominion, interest or control in or over the room where the exhibits were found. There was no proof, opinion or otherwise, as to when the fingerprint was made upon the exhibits with reference to the time they were found and seized. In fact, the government's fingerprint expert, while testifying that the fingerprints were "relatively fresh," also testified, "They might have been there for a month or more," and would not have been there for "more than five or six months." Of course, I agree that the weight of the evidence is for the trier of the facts, but this does not authorize the supplying of essential links by guess and speculation. And it is purely a matter of speculation as to when the fingerprints on these exhibits were made relative to the time they were found and seized. More specifically, in order to form the essential connecting link, it first must be inferred ("guessed" would be a better word) that the envelope contained heroin at the time the fingerprint was made, and based upon that inference it must be further inferred that proof of the fingerprint upon the envelope is proof that it was handled by the defendant and that the heroin contained therein was, therefore, in his possession.

Stoppelli v. United States, 9 Cir., 183 F.2d 391, is the sole case cited which it is asserted justifies such a strained process of weighing testimony. That case, however, is readily distinguishable. As the court there points out at page 392 of 183 F.2d: "The government's fingerprint expert testified that the fingerprint was placed on the envelope at a time when it contained a

powdery substance. Heroin is a powdery substance. The expert testified that in his opinion Stoppelli held the envelope, with a powdery substance in it, in his left hand, the print being that of the ring finger of the left hand. * * * He gave to the jury a detailed and technical explanation of his reasons for concluding that Stoppelli held the envelope in his hand at a time when it contained a powdery substance." Assuming that this testimony was properly admitted in that case, which I doubt, it at least supplied the links necessary to connect the defendant with the envelope at a time when it contained heroin. Therefore, its weight, so the court reasoned, was a matter for the jury. But in the instant situation, as shown, there was no testimony, opinion or otherwise, that there was anything in the envelope at the time it was contacted by the defendant's finger, and no proof, opinion or otherwise, that the envelope was handled by the defendant—in other words, no proof, opinion or otherwise, that the envelope was ever in the possession of the defendant.

Moreover, in the Stoppelli case, much stronger on the circumstances proven than the instant case, there was a strong dissenting opinion which, in my judgment, makes the majority opinion, even on the circumstances of that case, of little if any importance as an authority.

The lack of proof to justify a conviction is further emphasized by the government's dependence on a suggestion made by defendant's counsel during a colloquy with the court, that the defendant had constructive possession of the suitcase in which the heroin was found. This statement was made evidently in connection with and in support of the preliminary motion to suppress the evidence because of its asserted illegal seizure. The statement was thus made prior to defendant's plea of not guilty, which placed upon the government the burden of proving defendant's guilt beyond a reasonable doubt. I know of no principle of law which would make such a statement binding upon the defendant and which would permit its utilization by the government in support of the charge which it had the burden to prove. In my opinion, it is entitled to no consideration by this court and was entitled to none by the district court.

I am aware, of course, of the heinous nature of the charge, but this does not justify the affirmance of a judgment upon such a flimsy pretext as this record discloses. And this conclusion, in my view, does not result in a usurpation of the function of the trier of the facts. The point is that the proof essential to establish the charge was absent. There were no facts to be weighed.