**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Benito Cruz OROPEZA, Defendant-**
**Appellant.**

**No. 12770.**

United States Court of Appeals
Seventh Circuit.

March 7, 1960.

Doris A. Coonrod, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., J. B. McFaddin, John Peter Lulinski, Asst. U. S. Attys., of counsel, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and STECKLER, District Judge.

HASTINGS, Chief Judge.

Defendant-appellant Benito Cruz Oropeza and two co-defendants, Griego and Vasquez, were convicted in a court trial, without a jury, on a one-count indictment charging unlawful possession of marihuana in violation of the provisions of 26 U.S.C.A. § 4744(a). Oropeza, a second-offender under the terms of 26 U.S.C.A. §§ 7237(a) and 7237(c), was sentenced to five years imprisonment. He alone appeals from this judgment.

This appeal raises two central issues: whether the evidence supports the conviction and whether the Government is guilty of a fraud on the court in an alleged "concealment" of the names and addresses of two government informers.

The indictment charged that Oropeza and two co-defendants acquired approximately seventy-eight pounds of marihuana without paying the transfer tax levied on transferees by 26 U.S.C.A. § 4741(a). In failing to pay such tax, it is alleged that they violated the provisions of 26 U.S.C.A. § 4744(a).[1]

■■■ That Oropeza and his co-defendants became transferees and liable for the payment of the transfer tax was established by circumstantial evidence. The record and the evidence before us, upon our careful examination, fully support Oropeza's conviction.

On February 2, 1959, United States Customs Agents Magee and Kilman saw a 1954 Buick automobile in Uvalde, Texas. Kilman knew that this auto contained marihuana at that time. Two informers (whose full names and wherabouts Oropeza complains were suppressed by the Government, *infra*) notified the agents that they were to drive the load of mari-

huana to Chicago, Illinois. One or more customs agents kept the car under constant surveillance on the trip to Chicago.

On February 6 and 7, 1959, after arriving in Chicago, the two informers entered a tavern where Oropeza was working and asked for him by name. They talked with him there on both days. Oropeza testified that the two informers requested that he find a garage where they could change snow tires onto their car and that they offered to pay him $20.00 or $30.00 for this service. Oropeza stated he called defendant Vasquez who arranged to obtain the garage from his brother-in-law, defendant Griego. Oropeza and Vasquez drove from the tavern in Vasquez's car with the informers to the latter's Buick automobile. The two informers entered their Buick and followed Vasquez and Oropeza to the arranged garage. Vasquez then obtained the keys for the garage. The Buick was backed into the garage; all four men entered; and the door was locked. The garage was a two-car garage, occupied by the Buick and another automobile, the two cars taking up most of the interior floor space.

At this point, the customs agents who had been observing these movements gained entrance to the garage, found that the door panels had been removed from the Buick, and observed several wax packages containing marihuana, part of which was in a box on the floor of the garage and part of which was in the rear seat of the Buick. Customs Agent Glanzer asked Oropeza what was in the waxed packages; he replied, "You know what it is, it is marihuana." The three defendants were taken to the Chicago City Police

---

**1.** 26 U.S.C.A. § 4744(a) reads, in relevant part, as follows:

"Unlawful possession (a) Persons in general.—It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a)—

"(1) to acquire or otherwise obtain any marihuana without having paid such tax, * * *.

"Proof that any person shall have had in his possession any marihuana and shall

have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this subsection and of liability for the tax imposed by section 4741(a)."

A "transferee" comes within the definition found in 26 U.S.C.A. § 4761(4): "The term 'transfer' or 'transferred' means any type of disposition resulting in a change of possession * * *."

Department, where according to the testimony of a customs agent and a city detective, Oropeza admitted that he owned the load of marihuana in the Buick, that he had obtained it in Mexico, and that he had placed a telephone call from Chicago to find out the approximate arrival time of the load of marihuana. Upon demand, Oropeza stated he had no order form authorizing the transfer of marihuana as required by 26 U.S.C.A. § 4742.

Oropeza explained that when he entered the garage the two informers were removing the door panel; that he said he did not want to get into trouble; that an officer told him to say the material in the wax bags was marihuana; and that he was threatened by the officers in the garage and later at the police station. Government witnesses denied making such a statement and denied threatening Oropeza.

■■ The sensitive element in the crime charged is possession. A transferee is one who comes into possession of marihuana. If there is a showing of possession, that fact plus the absence of an order form required by 26 U.S.C.A. § 4742 is presumptive evidence of guilt under section 4744 and of liability for the tax imposed by section 4741(a). The Government has set this chain reaction in motion by sufficiently proving Oropeza's possession. Although there were conflicts between government witnesses and Oropeza on several disputed points, these matters go to credibility. It is well settled that credibility falls squarely within the province of the trial judge and that we do not sit as a trier of facts. United States v. West, 7 Cir., 1957, 248 F.2d 934; United States v. Owen, 7 Cir., 1956, 231 F.2d 831, certiorari denied 352 U.S. 843, 77 S.Ct. 42, 1 L.Ed.2d 59; United States v. White, 7 Cir., 1956, 228 F.2d 832, 834; United States v. Pisano, 7 Cir., 1951, 193 F.2d 361. We look only to the evidence which is favorable to the court's finding and the reasonable inferences to be drawn therefrom to determine whether there is substantial evidence to support the court's finding. United States v. New York Great

A. & P. Tea Co., 7 Cir., 1949, 173 F.2d 79, 81; United States v. Holsman, 7 Cir., 1956, 238 F.2d 141.

The record discloses substantial evidence to support the court's finding of guilt. Oropeza's presence, his admissions, his identification of the marihuana, the fact that the informers asked for him by name in the tavern, and the implausibility of Oropeza's explanation of the reason for the rental of the garage all circumstantially support the fact of his possession of the marihuana and his guilt.

■ The second main issue in this appeal is the charge that the Government concealed the full names and addresses of the two informers who were active participants in the crime, who were unknown to the defendant, and who were material and vital witnesses since they could testify on the issue of Oropeza's possession of the marihuana. The alleged concealment is attacked as a violation of the Sixth Amendment of the Constitution inasmuch as it effectively nullified Oropeza's right to have compulsory process for obtaining witnesses in his favor and denied him due process in violation of the Fifth Amendment.

The pertinent facts are these. Prior to the trial before Judge Perry, Oropeza's counsel filed a motion before Judge Sullivan for a bill of particulars, requesting that the Government supply the names and addresses of the two informers. Judge Sullivan indicated that he was going to deny the bill, and counsel voluntarily withdrew the request. The Government, then and now, asserts that it does not know the full names and addresses of the informers but was willing to supply Oropeza with all the information it possessed. The Government thereupon gave the following bill to counsel: "The names of the persons from whom the defendants are alleged to have obtained possession of the marihuana charged in the indictment heretofore filed herein, insofar as they are known to the Government, are: Federico Llamas and Francisco (the last name unknown). Their addresses are unknown."

While the Government claims it gave all the information it possessed, Oropeza charges that this statement must be fraudulent because it is highly unlikely that the government agents could be in contact with the two informers for a full week before the events of February 7, 1959, and for a day or two thereafter and not know their full names and whereabouts.

Oropeza's charge of fraud and conscious concealment of pertinent facts must be rejected. It is a serious attack on the integrity of government counsel. There is no evidence of any sort in the record that supports such a charge. Such fraud may not be presumed.

Oropeza took full advantage of his opportunity to comment before the trial judge on the failure of the Government to call the informers and on the inference to be drawn therefrom that their testimony might be adverse to the Government.

■ Having rejected Oropeza's charge of *active fraud,* we do not reach this further issue: whether the Government is under a *duty* to make a good-faith effort to inform itself of the names and addresses of its informers who take an active part in the commission of the crime charged against a defendant in order to allow the defendant maximum opportunity to call them as witnesses.

This issue is raised by implication from the decision in Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. Roviaro holds that the Government has no absolute privilege to withhold information *that it possesses* concerning the identity of persons who furnish information to law enforcement officers where the person had actively participated in the transaction for which the defendant stands accused. The next logical question follows whether the Government can avoid the implication and mandate of Roviaro merely by making no attempt to inform itself fully of the identity of its informers. The answer must be resolved within the standards set out in the Roviaro case. 353 U.S. at page 62, 77 S.Ct. 623.

Even had Oropeza chosen to argue this theory instead of the charge of active fraud, nevertheless we could not now face this issue. After having voluntarily withdrawn the demand for a bill of particulars before Judge Sullivan prior to the trial, Oropeza made no further formal demand for information. The Government immediately furnished all the information it had available. The record stands bare of any reversible error committed by the district judge. There is no such question before us.

We have considered the other contentions advanced by Oropeza and find them without foundation.

The judgment of the district court is Affirmed.