UNITED STATES of America, Plaintiff-Appellee,

v.

John Joseph ZIAK, Defendant-Appellant.

No. 15175.

United States Court of Appeals Seventh Circuit.

April 20, 1966.

Rehearing Denied June 9, 1966.

Doris A. Coonrod, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, Erwin I. Katz, Asst. U. S. Attys., Chicago, Ill., Lawrence Jay Weiner, Asst. U. S. Atty., of counsel, for appellee.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

John Joseph Ziak, defendant, appeals from a judgment order, based on a jury verdict, convicting him of violations of § 174 Title 21 United States Code as amended by the Narcotic Control Act of 1956, as charged in counts 1 and 2 of an indictment. Defendant was committed to custody of the attorney-general for a period of eight years on each of said counts, said sentences to run concurrently with each other.[1]

1. Count 1 charged a conspiracy between defendant and Sylvester Moore, who was not named as a defendant herein, to unlawfully traffic in narcotics, and charged several overt acts in pursuance thereof, while count 2 charged Ziak with unlawfully trafficking in narcotics on or about April 24, 1964.

It is the contention of Ziak that the evidence offered by the government to establish its case does not in fact prove a conspiracy or that Ziak was a conspirator.

The government, relying on the principle that after a verdict of guilty this court will view the evidence in the light most favorable to the government, although the testimony of defendant may not be ignored, asserts that the evidence revealed a conspiracy between defendant and Moore as charged. We have carefully considered this evidence. We hold that, viewed as a whole, it was ample to sustain the jury's verdict that defendant and Moore were engaged in an illegal conspiracy for the sale of narcotics.

2. During the trial Ziak's counsel called to the attention of the district court the fact that Ziak was arrested as a result of a complaint based on transactions occurring about four months prior to the arrest. Ziak was arrested as he alighted from a Ford panel truck. He was searched and placed by the truck with his hands on the side of the vehicle while narcotics agent Kennedy searched the truck, finding above the sun visor a brown sack containing narcotics.

From the testimony it appears that an arrest warrant was obtained shortly after the agents received a statement from Moore in 1964. The contents of the statement were not made a part of the record.

While counsel for Ziak admits that the law is that an automobile may be searched without a search warrant where "there is strong reference to mobility and urgency", he says that here Ziak was in custody and there was no showing of mobility or urgency.

Ziak's counsel distinguishes Armada v. United States, 5 Cir., 319 F.2d 793 (1963) on the ground that in that case the facts revealed that the agents knew of the presence of narcotics in a certain suitcase. The agents knew that Armada took the suitcase out of a hotel and when approached by agents he admitted the car was his and that that suitcase was in its trunk. There being no warrant for

---

1. Defendant's motion for a new trial and his motion in arrest of judgment were overruled.

Armada, he could have driven the car away unless it was seized. Hence, counsel says, the court at 797 stated:

"Before making the search of the automobile, the agents had information which constituted probable cause to believe the suitcases contained cocaine, and Armada had admitted the suitcase 'is right there in the car.' Unless Armada was arrested or the car was seized, the automobile could readily be moved."

Counsel says that no such facts existed with reference to Ziak.

Defense counsel also relies on Sirimarco v. United States, 10 Cir., 315 F.2d 699 (1963), dissenting opinion at 702, cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032 (1963).

On the other hand, the government points out that Ziak was arrested as he alighted from his truck and that he does not question the validity of the arrest. It says the search was conducted immediately incident to the arrest. We hold it was therefore valid. Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Walker, 4 Cir., 307 F.2d 250, 252 (1962); United States v. Pisano, 7 Cir., 193 F.2d 361 (1951); United States v. Jones, 7 Cir., 340 F.2d 913 (1964).

Moreover, before the jury was selected in the case at bar, the court held a hearing on defendant's motion to suppress evidence. Evidence showed that on November 26, 1963, defendant went to Moore's residence and later that day met with Moore when defendant was driving the truck which was later seized. Moore handed something to Ziak, then reentered the truck and left. Agent Turnbou told agent Hughes (who was in charge of the investigation) that he purchased narcotics from Moore.

It is clear that probable cause existed for seizure of the vehicle prior to the date of the arrest and search. Once it was lawfully seized and in possession of agents, no warrant or consent of the owner was necessary for the search. Sirimarco v. United States, supra.

We find no error in regard to the search of the truck.

3. During the cross-examination of government agent Turnbou by defense counsel, questions were asked about one Gus Kountis. Similar questions were asked on cross-examination of agent Halpin. Halpin testified:

"I had nothing to do with Kountis other than the fact that after his arrest, I was advised by radio and I went down—just prior to his arrest, and arrived about the time the arrest was made, and that was all I had to do."

After Mr. McDonnell, defense counsel, stated that he had no further questions, Mr. Brown, assistant district attorney, stated:

"Your Honor, in view of the last series of questions, I will ask the Court to take judicial notice of the fact that Gus N. Kountis was tried and convicted before you involving the charge of possession of heroin, possession on the 9th day of March of 1964. That matter was adjudicated by you."

Defense counsel objected "in the presence of the jury" and stated:

"He is testifying, Judge. He is not on the witness stand."

The court then told Brown that he could bring in a certified copy of the conviction if he wanted to and Brown said that he would do so. The court then adjourned for the day.

Two days later arguments were heard from both sides concluding with a final argument by Mr. Brown. When he reached that part of his argument in which he was discussing the credibility of witnesses, he said, in part:

" * * * It's a sad day not for Ziak, not for the country, but for everybody when the Federal Government would attempt to frame somebody. And I submit to you that we have not, we didn't in this case, and we won't. And there is a very good point to bring out on that.

"He said we framed him. That's what he is telling you—that all of these agents got up on the stand and committed perjury. I told you in advance that I had talked to all the witnesses, and I suppose the next thing is that I suborned the perjury. Well, whatever the facts may be as far as he is concerned, let me say this to you: If we had wanted to frame the defendant, don't you think that we would have done it on the whole cloth? At the time of his arrest, Hughes would have marched upon the stand along with six other agents, and sat down on the witness stand and said, 'Ziak, we caught you selling narcotics. You and Moore were in a conspiracy.' And what would he have said if he wanted to frame him? He would have said, 'Ziak told them'—"

At this point defense counsel objected on the ground that Mr. Brown was sitting *on the witness stand* while giving his closing argument.

The court overruled the objection and, as far as the record shows, Mr. Brown continued to sit on the witness stand before the jury during the remainder of his argument, when he said, among other things:

"Ladies and gentlemen, these agents came in and told you the truth. They told you the way it happened. * * *"

Here was a prosecutor sitting in the place reserved for persons who customarily give testimony upon which juries rely in deciding cases. It is an historical location in every American courtroom. It is a symbol of truth and justice and so recognized by the triers of fact. Yet on the important issue of the veracity of government witnesses, a lawyer for the government was permitted to occupy that seat and, without being sworn as a witness, was allowed to tell the jurors that the (government) agents told them the truth.

We disapprove of such theatrical tactics in a federal court of law. Only because of our abiding confidence that the intelligence of the jurors in fact rejected this performance, do we refrain from reversing the judgment of conviction in this case. We trust that in this circuit the witness box will be henceforth used only for witnesses.

For the reasons hereinbefore stated, the judgment order from which this appeal was taken is affirmed.

Judgment order affirmed.

SWYGERT, Circuit Judge, concurs in the result.