Nickolas **GUERRA**, Sr., Appellant,

v.

**UNITED STATES** of America, Mary Guerra, Columbia Savings and Loan Association, United Bonding Insurance Company, Appellees.

No. 8697.

United States Court of Appeals
Tenth Circuit.

Dec. 30, 1966.

---

Charles S. Vigil, Denver, Colo., for appellant.

John Burke, Denver, Colo., for appellees.

Before LEWIS, ALDRICH,* and HICKEY, Circuit Judges.

ALDRICH, Circuit Judge.

This is a civil suit by the United States to foreclose a substantial tax lien. The tax was assessed pursuant to I.R.C. § 4741 (1954), which imposes an excise tax of $100 per ounce, payable by the transferee, upon all transfers of marihuana to persons not registered under sections 4751 to 4753 of the Code. The defendant was admittedly not so registered, and the question before the court was whether he was, as alleged, a transferee of 74 pounds of marihuana. The district court ordered judgment for the government, and the defendant appeals.

The pertinent facts, as found by the court sitting without jury, United States v. Guerra, D.Colo., 1965, 237 F.Supp. 1, are as follows. On January 24, 1962, one Jesus Hernandez was promised $200 to drive a 1951 Oldsmobile, which he was told contained marihuana, from Juarez, Mexico, to Pueblo, Colorado. Hernandez was informed that he was to deliver the automobile to a man named Guerra, in Pueblo, and was given a telephone number which proved to be that of the defendant Guerra's farm near Pueblo. Customs officials of the United States, having been told that the 1951 Oldsmobile would be carrying marihuana, picked up Hernandez's trail in Juarez and followed him to his home in El Paso, Texas, where they observed him put Colorado license plates on the car. They then followed him into New Mexico, where he was arrested by state police near Alamogordo and was searched and charged with illegal possession of marihuana.

While Hernandez was in the custody of the state police the customs officers persuaded him to assist them by making the delivery as planned. Hernandez then set out from Alamogordo with customs officials riding with him in the car, and at times driving it, and with two government cars following. At one point on the journey Hernandez made a collect call to Guerra, which the latter accepted after Hernandez said that he had a "message from Mexico." Hernandez told Guerra that he was "broke," and Guerra wired $15 to enable him to pay traveling expenses.

When the caravan reached Walsenburg, Colorado, two of the customs officials concealed themselves in the trunk of the Oldsmobile, maintaining radio contact with the two official cars that were following. Upon reaching Pueblo, Hernandez stopped at a gasoline station and again called Guerra. Guerra came to the station and instructed Hernandez to follow him. He led Hernandez to his farm and told him to drive the car into the garage. Guerra then came into the garage, asked where the "load" was, and was told that it was inside the door panels and under the hood. Hernandez and Guerra together removed two or three paper bags, which were later shown to contain about one pound of marihuana.

---

* By designation.

each. Guerra said that the marihuana looked "O.K." and went into his house. At this point the customs officers emerged from the trunk of the Oldsmobile and hid behind the car. Guerra reappeared with a jar, later shown to have contained marihuana, and said, "This is the type of stuff I have." At this point the officers arrested him and finished emptying the Oldsmobile. There were, in all, seventy-five bags which the court found contained seventy-four pounds of marihuana.

■■ Appellant's first contention is that he never became a transferee of the marihuana and consequently never became liable for the tax. He claims that he "had no power to direct the disposition of or to exercise actual dominion over the marihuana simply because the alleged transfer had not yet progressed to that point when he was arrested." We cannot agree. Appellant had knowingly guided the marihuana into his own garage: the transfer had been completed. It is true that he was prevented from putting the marihuana to the purpose for which he had ordered it, but the tax is imposed on the receipt of marihuana, not on the use to which it is subsequently put. The fact that possession following receipt was short-lived, and that the officers were prepared to seize the goods does not mean that the defendant did not receive them.

Nor can we accept appellant's claim that the role played by government officials makes this transaction something other than a transfer. The officers neither devised nor directed the transportation scheme. In substance, what they did was not to interrupt it. They did no more than assist the carrying out of a mission that had been planned before they became aware of it. Defendant, meanwhile, performed every act necessary to bring the marihuana into his possession. On the court's findings, he had known it was coming, had wired $15 to facilitate its transportation, had led the automobile that he knew contained it

onto his own property with the intention of keeping it, and had taken some into his hands, and given instructions as to the rest. There is no basis for a claim that defendant was not a willing transferee. See United States v. Oropeza, 7 Cir., 1960, 275 F.2d 558. Equally, he was not entrapped, where there is no showing that, absent government participation, the events would not have occurred. The government agent did not even initiate the transaction by offering the opportunity. Cf. Osborn v. United States, 385 U.S. ——, 87 S.Ct. 429, 17 L.Ed.2d —— (Dec. 12, 1966); Sandoval v. United States, 10 Cir., 1960, 285 F.2d 605; Haynes v. United States, 5 Cir., 1963, 319 F.2d 620, cert. den. 375 U.S. 885, 84 S.Ct. 161, 11 L.Ed.2d 115.

■ Finally, defendant raises a series of contentions centering upon the claim that the tax imposed by section 4741 is penal, rather than civil, and consequently that he was entitled to the presumptions and defenses accorded a criminal defendant. The exact thrust of this contention is difficult to determine, since defendant has not favored us with any explicit statement of how he was prejudiced by the court's treatment of this as a civil matter. The contention is erroneous at its core, however, since the Supreme Court has explicitly held that the statute may be treated as civil even though its primary purpose is not to provide governmental revenues, but to regulate traffic in marihuana. United States v. Sanchez, 1950, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47. Consequently, the government was not required to prove every element of its case beyond a reasonable doubt.*

Specifically, we find the court well warranted in concluding that there was a prearranged plan to have Hernandez deliver marihuana to Guerra and that Guerra knowingly accepted delivery of 74 pounds of it. No more was required.

Affirmed.

---

* We might add that the defendant did not request the court to rule that the government had such a burden. For all we know, the court may, in fact, have felt that firmly convinced.